## In re OLESON.

(District Court, N. D. Iowa, W. D.    October 8, 1901.)

1. BANKRUPTCY—ASSETS—RENTAL OF EXEMPT PROPERTY.
   Notes taken by a bankrupt after adjudication, for the future rental of land which is exempt, do not constitute assets of his estate in bankruptcy.

2. SAME—REVOCATION OF DISCHARGE—REQUISITES OF APPLICATION.
   Where a mortgage given by the bankrupt, covering substantially all his personal property, was shown by his schedules, but its validity was not questioned by any creditor during the pending of the case, and until nearly a year after the bankrupt's discharge, the court is not justified in then entertaining a petition for the revocation of the discharge, on the ground that such mortgage was fraudulent, unless it is made clear that the creditor filing it has not been guilty of laches; and that cannot be done by general averments of conclusions, to the effect that he has not been guilty of negligence, or has acted with due diligence.

In Bankruptcy. On petition asking an order setting aside the discharge granted the bankrupt.

E. M. Sayles, for creditor.

SHIRAS, District Judge. The discharge granted the bankrupt, and which it is now sought to set aside, is dated November 5, 1900. The petition seeking its revocation was filed October 5, 1901, and is based upon the allegation that the bankrupt had concealed from his creditors certain personal property, consisting of notes for $400 held by the bankrupt for the rental of 160 acres of land, entered by the bankrupt under the homestead laws of the United States, and by him claimed to be exempt from execution, and certain articles of personal property covered by a chattel mortgage for $1,700 executed by the bankrupt to his father on the 1st day of March, 1900, which was duly recorded, and was set forth in the schedules filed by the bankrupt.

The notes for the rent of the realty were not given until after the adjudication in bankruptcy, nor was the land rented to the lessee until after the adjudication. The right to hold the land as exempt is not questioned, and, if it be true that it was and is exempt, I can see no ground for holding that the rental therefor contracted for and accruing after the adjudication belongs to the creditors.

It is also charged that the chattel mortgage to the father is void as to creditors, being given without consideration. The existence of this mortgage was shown on the schedules attached to the petition in bankruptcy, but it was not attacked in any way. The creditor took no action for the purpose of investigating its validity, but permitted the case to proceed to a final conclusion without raising any question about this mortgage, and now, after the lapse of 11 months from the granting the discharge, asks the court to revoke the discharge, on the ground that this mortgage was without consideration, and given in fraud of creditors. Section 15 of the bankrupt act authorizes the revocation of a discharge upon the application of parties in interest who have not been guilty of undue laches, the application to be filed within one year from its date. The creditor avers that the knowledge of the concealment of the property of the bankrupt had come to the petitioner since the discharge was granted, and that petitioner has not been guilty of undue laches in bringing this proceeding. It is not shown that the creditor has used any diligence whatever, in the premises, nor what facts, if any, have been discovered to show the invalidity of the mortgage, nor how or when these facts were discovered, which are relied upon to prove the invalidity of the mortgage. It is apparent that if the court should approve the practice of allowing a creditor to attack a discharge, months after its date, without making any substantial showing of facts to prove the absence of undue laches, it would open the door to unfair attacks upon the bankrupt on the part of single creditors, who would hope to force payment to them, in order to avoid the cost and possible injury to the bankrupt, who may have entered into new business pursuits, which would be seriously affected if the question of his liability on the debts barred by the discharge were to be reopened. When, as in this case, the existence of the mortgage now claimed to be fraudulent was shown in the original schedules, and the creditors do not question its validity during the pendency of the case, and the discharge is granted, the court will not be justified in entertaining a petition for the revocation of the discharge, unless it is made clear that the creditor has not been guilty of laches; and that cannot be done by general averments of mere conclusions to the effect that the party has not been guilty of negligence, or has acted with due diligence. The rule that should be followed is stated by the supreme court in Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807, wherein the general subject of laches in connection with the plea of the statute of limitations is discussed, it being therein said:

"It will be observed also that during the long period over which the transaction referred to extended the plaintiff never made or caused to be made the slightest inquiry in relation to either of them. The judgments confessed were of record, and he knew it. It could not have been difficult to

ascertain, if the facts were so, that they were shams. The conveyances to Alvin & Keller were also on record in the proper offices. If they were in trust for the defendant, as alleged, proper diligence could not have failed to find a clew in every case that would have led to evidence not to be resisted. With the strongest motives to action, the plaintiff was supine. If underlying frauds existed, as he alleges, he did nothing to unearth them. It was his duty to make the effort. * * * The discovery of the cause of action, if such it may be termed, is thus set forth: 'And the plaintiff further avers that he had no knowledge of the facts so concealed by the defendant until the year A. D. 1872, and a few weeks only before the bringing of this suit.' There is nothing further upon the subject. In this class of cases the plaintiff is held to stringent rules of pleading and evidence, 'and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been made before.' Stearns v. Page, 7 How. 819–829, 12 L. Ed. 928, 932. A general allegation of ignorance at one time and of knowledge at another is of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner. * * * Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led."

There is apparent in the practice under the bankrupt act a tendency, on part of creditors, to take no action in the case until the matter of discharge is reached, and then to rely upon matters which should be investigated during the prior proceedings. The act provides ample means for ascertaining the facts touching the property of the bankrupt and the validity of liens asserted against the same. Take the case now before the court for an illustration. It is now sought to set aside the discharge on the ground that the chattel mortgage to the bankrupt's father is invalid for want of consideration. This mortgage was filed for record in the office of the county recorder on the 1st day of March, 1900. It was set forth in the schedules attached to the petition in bankruptcy, which was filed August 1, 1900. It is not shown that the creditors ever made any examination into its validity. They were content to let it pass, without examining the bankrupt or the mortgagee with respect thereto, and yet they knew that it covered substantially all the personal property of the bankrupt, and certainly were put upon notice if they purposed to question its validity. They took no action during the time the case was pending, and when the whole machinery of the act and of the bankruptcy court was open to them for investigating the validity of the mortgage. When the petition for discharge came up for hearing, it was not opposed by reason of the existence and alleged fraudulent character of this mortgage. The discharge was granted, and now, 11 months thereafter, it is sought to set aside the discharge, on the allegation that this mortgage was given without consideration and as a means for covering up the property of the debtor. No showing of facts is made explaining why the validity of this mortgage was not inquired into during the pendency of the proceedings. The evil that may result from allowing attacks upon the validity of a discharge months after it has been granted is apparent. The bankrupt, having received his discharge, will ordinarily engage in new business enterprises, and may become indebted to many persons, who, in good faith, extend credit to him in the belief that the discharge granted

bars the pre-existing indebtedness, and their rights will be seriously affected if the discharge is revoked and held for naught. Section 15 of the act authorizes the revocation of a discharge upon an application made within one year from its date, but it must appear that the creditor has not been guilty of undue laches, and that the fraud charged has come to the knowledge of the creditor after the granting of the discharge. The burden is on the petitioner to aver in his application the facts showing his freedom from laches, and, as ruled in Wood v. Carpenter, supra, it is not sufficient to make, in the application, general averment of conclusions. The facts must be stated, in order that the court, being advised thereof, may determine whether ground is shown for permitting an attack upon the discharge; for a court, in view of the effects to others, is not justified in entertaining an application to set aside a discharge, unless it is clearly made to appear that the creditor has not been guilty of laches in the premises.

The application in this case wholly fails to meet these requirements, is clearly insufficient, and must therefore be refused.