## In re KNOFSKY.

### Petition of PENNSYLVANIA TRUST CO.

District Court, W. D. Pennsylvania. April 20, 1927.

### No. 11538.

1. **Bankruptcy** ⟜417(4)—**Creditor's delay of more than five months held undue laches, barring motion for revocation of discharge (Bankruptcy Act, § 15 [Comp. St. § 9599]).**

An objecting creditor, who did not examine bankrupt on his application for discharge, and delayed for five months after gaining knowledge of facts which might have prevented discharge before moving for its revocation, *held* chargeable with undue laches, within Bankruptcy Act, § 15 (Comp. St. § 9599).

2. **Bankruptcy** ⟜407(1)—**Conviction of crime of using mails to defraud held not ground for refusing discharge.**

Conviction of bankrupt of crime of using mails to defraud, by sending out false financial statement of a corporation, is not ground for refusing discharge, where it does not appear that he obtained money or property by means of such statement.

3. **Bankruptcy** ⟜408(½)—**Commission of criminal offense to bar discharge must be of offense defined in the act (Bankruptcy Act, § 14b[1], being Comp. St. § 9598).**

Commission by bankrupt of an "offense punishable by imprisonment as herein provided" (Bankruptcy Act, § 14b[1], being Comp. St. § 9598), which is ground for refusing discharge, must be of an offense defined by the act.

In Bankruptcy. In the matter of Roy Knofsky, bankrupt. On motion to dismiss the petition of the Pennsylvania Trust Company, trustee in bankruptcy of the Sharon-Warren Iron & Metals Company, to revoke order of discharge. Motion granted.

Stonecipher & Ralston, of Pittsburgh, Pa., and Jay Buchwalter, of Warren, Ohio, for bankrupt Knofsky.

T. D. Chantler and John T. Duff, Jr., both of Pittsburgh, Pa., for petitioner.

THOMSON, District Judge. This is a petition of the Pennsylvania Trust Company, trustee in bankruptcy of Sharon-Warren Iron & Metals Company, to revoke an order discharging Knofsky as bankrupt. The facts of the case are briefly these:

Roy Knofsky was adjudged a bankrupt on July 3, 1924, and application for his discharge was filed on August 25, 1925; exceptions to the discharge were filed by the Pennsylvania Trust Company, trustee, on November 18, 1925. Hearing on the exceptions was had in March, 1926, and the bankrupt was discharged on April 5, 1926. On May 6, 1925, an indictment was found against Knofsky and others, charging them with a fraudulent use of the mails while officers of the Sharon-Warren Iron & Metals Company. On April 20, 1926, a plea of guilty was entered by Knofsky; the court imposing a sentence of six months in the county jail. A little later the said Knofsky was paroled upon his making restitution to the trustee in bankruptcy of the said corporation of the sum of $17,500.

The trustee, after having filed exceptions to the discharge, and six months after accepting the proposed restitution of $17,500, filed a petition in this court to revoke the discharge, assigning the following reasons: (1) Because the guilt or innocence of the charge in the indictment had not been determined, it could not be used as an objection to the discharge. (2) Had the plea been entered, it would have justified the court in refusing the discharge. (3) Few of the creditors had knowledge of the criminal proceeding and were not parties to the parole. (4) That the Sharon-Warren Iron & Metals Company was a creditor of Roy Knofsky, who was president and general manager of the said company

After this motion to dismiss, they assigned the following: (1) The fraud in obtaining the discharge was the concealing of the guilt as to the charge in the indictment and knowledge of the fraud did not come to

the petitioner until after discharge. (2) The alleged fraudulent statements mentioned in the indictment were the inducing cause of certain creditors selling merchandise to the Sharon-Warren Iron & Metals Company. (3) The actual facts did not warrant the granting of a discharge.

[1] A motion to dismiss the petitioner, which is in the nature of a demurrer, was made, and after argument the motion was sustained. Section 15 of the Bankruptcy Act (Comp. St. § 9599) provides:

"The judge may, upon the application of parties in interest who have not been guilty of undue laches, filed at any time within one year after a discharge shall have been granted, revoke it upon a trial if it would be made to appear that it was obtained through the fraud of the bankrupt, and that the knowledge of the fraud has come to the petitioners since the granting of the discharge, and that the actual facts did not warrant the discharge."

It is clear that each of the requirements of the statute must be alleged and established. The trustee of the corporation filed exceptions to the discharge; it had full opportunity to examine the bankrupt at the time of the discharge. The records of this court were open showing the pending indictment against the bankrupt. The petitioner was a party to the record in this criminal proceeding and accepted $17,500 as restitution made by the bankrupt. No move was made by the petitioner from April 26 to October 2, 1926, to attack the discharge. Under the circumstances it would appear that the petitioner was guilty of undue laches. In re Upson (D. C.) 124 F. 980, 10 Am. Bankr. Rep. 758, it was said:

"A creditor who desires to oppose the discharge of the bankrupt should see to it that the bankrupt is fully examined as to all his business transactions, and, when opportunity is given to file specifications of objection and test the merits of the application for a discharge, the creditor should be diligent in investigating the facts."

The court held there that due diligence had not been exercised by the petitioner.

In Re Oleson (D. C.) 110 F. 796, 7 Am. Bankr. Rep. 22, Shiras, District Judge, stated the principle in these words:

"The evil that may result from allowing attacks upon the validity of a discharge months after it has been granted is apparent. The bankrupt, having received his discharge, will ordinarily engage in new business enterprises, and may become indebted to many persons, who, in good faith, extend credit to him in the belief that the discharge granted bars the pre-existing indebtedness, and their rights will be seriously affected if the discharge is revoked and held for naught. Section 15 of the act authorizes the revocation of a discharge upon an application made within one year from its date, but it must appear that the creditor has not been guilty of undue laches, and that the fraud charged has come to the knowledge of the creditor after the granting of the discharge. The burden is upon the petitioner to aver in his application the facts showing his freedom from laches, and, as, ruled in Wood v. Carpenter [101 U. S. 135, 25 L. Ed. 807] supra, it is not sufficient to make in the application, general averment of conclusions."

To like effect are the cases of In re Downing, 28 Am. Bankr. Rep. 778, and In re Griffin Bros. (D. C.) 154 F. 537, 19 Am. Bankr. Rep. 78.

[2, 3] The fraud alleged in the amended petition is in concealing his guilt as to the charge with which he stood indicted. This is not such fraud as contemplated by the statute. Section 14b of the Bankruptcy Act (Comp. St. § 9598) sets forth all of the cases in which the discharge should be refused. The first is, "committed an offense punishable by imprisonment as herein provided." This means an offense against the Bankruptcy Act. The second relates to concealing his financial condition, destruction or failing to keep books of account, etc. The question of concealment of assets was fully heard before the referee, and was found to be groundless. The conviction of the crime of using the mails to defraud would not appear to be a ground to prevent a discharge. The Bankruptcy Act limits its refusal of the discharge to the several offenses punishable by imprisonment, as provided in section 29 of the act (Comp. St. § 9613). The indictment charged the defendant, as a stockholder, director, president, treasurer, and general manager of the corporation, with having caused a false financial statement of the corporation to be sent through the mails. It is not charged that the bankrupt received any credit or merchandise as a result of said statement, nor does the Bankruptcy Act, prior to the amendment of 1926 (44 Stat. 662), make a false statement to an agency ground to refuse a discharge.

The Case of Applebaum, 11 F.(2d) 685, 7 Am. Bankr. Rep. (N. S.) 732, Circuit Court of Appeals of the Second Circuit, is in point. The bankrupt was in the grocery business under the form of a corporation in which he

owned substantially all the stock. The false financial statement was issued to obtain money for the corporation. It was signed by the bankrupt, but the money went to the corporation, and there was no evidence that he obtained any part of it for himself, or intended to do so when he issued it, except in so far as he might be benefited by the company's business. The court held:

"If it is necessary under section 14b(3) * * * to show that the bankrupt got any of the property, the evidence is not sufficient. The corporation got it, and so far as appears he never withdrew any part of it, and, although he owned all the stock, there is no evidence that he ignored the corporate entity or treated the corporate till as his own. So the case presents the question whether the word 'obtains,' in section 14, means that the bankrupt gets the money or property himself, or whether it is enough that he is the means of getting it for a third person. To put a bare instance: Suppose the bankrupt wishes to accommodate another person and indorses his note, making a false statement as to the maker's financial ability, to secure its acceptance. The holder would be the bankrupt's creditor, but by hypothesis the money would go to the maker. A majority of the court believes that the statement would not bar the bankrupt's discharge, because he had not obtained the money."

In addition, therefore, to the laches with which petitioner is chargeable, it does not appear that the discharge was obtained through the fraud of the bankrupt, nor does it appear that, if the facts now offered to be shown were made to appear, they would be sufficient to prevent the discharge.

The action to dismiss is therefore sustained, and petition dismissed.