### In re SANDERS.
No. 20713.

District Court, N. D. Georgia.
July 29, 1937.

Wm. G. Grant and W. O. Slate, both of Atlanta, Ga., for the bankrupt.

Augustine Sams, G. H. Wotton, and T. B. Higdon, all of Atlanta, Ga., for exceptors.

SIBLEY, Circuit Judge.

The bankrupt filed his voluntary petition in bankruptcy May 22, 1934, and was adjudicated. He scheduled claims of three creditors, Mrs. Hettie W. Hudlow, $800 on a note in suit; Atlanta Athletic Club, a note, $100; and his brother L. B. Sanders, notes, $10,000. The only property scheduled was $135 in personalty claimed as exempt. Under the head "Property in reversion and remainder, including property held in trust for the debtor," he answered each question "None." At the first creditors' meeting no claims were proven, no trustee was appointed, and the scheduled property was set aside by the referee as exempt. Thereafter an amendment was allowed to add to the list of creditors Dr. H. C. Miller, $371 on open account. A discharge was regularly granted June 15, 1935. On April 9, 1936, Mrs. Hudlow and Dr. Miller petitioned that the discharge be revoked, that the case be reopened, and re-referred to the referee to re-examine the bankrupt, to appoint a trustee and to administer the assets; because the bankrupt at the time of bankruptcy and discharge had a vested remainder interest after the death of his mother in the estate of his father under a will probated in 1922, which interest was worth $10,000, and that it had been willfully and intentionally concealed so that there was fraud in procuring the discharge and the facts did not warrant a discharge; of which petitioners got knowledge only since the discharge. On June 5, 1936, still within a year from the discharge, Atlanta Athletic Club intervened to support the petition. The referee as special master heard the evidence, all orally delivered, and recommends that the petition be granted. The bankrupt contends that no intentional fraud was proven but only a mistake of law as to the nature of his interest, and that no petitioner is entitled to maintain the petition under section 15 of the Bankruptcy Act (11 U.S.C.A. § 33), either because not shown to have "gotten knowledge of the fraud since the discharge," or because not a "party in interest."

One who is hurt or helped by the discharge is a party in interest. The bankrupt and his creditors since adjudication are helped by it. Persons scheduled as creditors having provable claims are prima facie hurt by the discharge, in that it is a bar to general suits on their debts. Mrs. Hudlow and the Atlanta Athletic Club had suits pending when bankruptcy was begun. Dr. Miller had not pressed his account, and its last item definitely proven was in April, 1930, so that it was barred by the Georgia four-year statute of limitations before the bankruptcy proceeding was filed, and the bar is asserted by the bankrupt in his answer to this petition. Dr. Miller therefore cannot sue upon his claim and is not hurt by the discharge. He is not a party in interest. He argues that the listing of his claim by amendment of the schedule of creditors amounts to an unequivocal acknowledgment of his debt as a subsisting obligation which is the equivalent of a written new promise

100

to pay and sufficiently relieves the bar of the statute under Georgia Code 1933, § 3-706; Lambert v. Doyle, 117 Ga. 81, 43 S. E. 416. But a bankrupt's schedule of creditors is intended to exhibit those who claim debts. The bankrupt is not acknowledging the debts, but is attempting to destroy them. If he considers any of them not justly due because of fraud, failure of consideration, or limitation, he schedules them but may challenge them when offered to be proved. If a debtor can in his petition for bankruptcy reinstate a barred debt, this debtor did not. His amendment makes no promise to pay Dr. Miller's barred debt, and does not make "such an absolute and unqualified admission of it as an existing indebtedness as that the law would imply a promise to pay the same," to quote Lambert v. Doyle, supra. Such an implication is wholly at war with the debtor's evident purpose, which was to defeat Dr. Miller's claim.

Mrs. Hudlow had worked as stenographer for the bankrupt's father for many years before his death in 1922, and worked for a year or more afterwards for his executor and trustee in connection with the estate's business, and after that she worked for the bankrupt several years, being a third owner of the enterprise in which they were engaged till he bought her out in 1927, when she worked for his brother till 1932. She knew well all the Sanders family, heard the will of Mr. Sanders read in 1922 and read it herself once, and knew it was recorded at the county seat, and she assisted the executor under it as above stated. When she began suit on her note in 1934, L. B. Sanders saw her for his brother, and called her attention to his brother's interest in the father's estate which would come to him at the mother's death, sufficient to pay him and her, and told her that to press his brother would mean a bankruptcy which would defeat her and him. She testifies that she got the notice of creditors' meeting and discharge in the bankruptcy, but did not prove her claim or resist the discharge because her attorney advised her there were no assets. She did not tell him to look into the will, so far as appears, but later her present counsel did so, and, getting Dr. Miller to join her, she filed the present petition. The will vests the estate in the executor as trustee to manage, and pay the income to testator's wife for her life or widowhood, and after her death to pay the income to his four children (bankrupt being one) until

each reaches thirty years, when he is to receive one-eighth of the estate, and at thirty-five to receive another eighth; and, if a child dies before receiving his share of the estate, it is to go to his child or children per stirpes. Mrs. Hudlow's present counsel is correct in contending that the bankrupt takes a vested remainder after his mother's life estate in a fourth of the estate, subject to be divested on his death before receiving his share of the estate. He is thirty-six years old, so that the only contingency now is that he may die before his mother. Such an estate in Georgia is vendible and may be applied to debts. It would be otherwise if the gift in remainder had been to such children as survive the mother, for in that case there would be a contingency as to the person who is to take which would prevent the remainder vesting in anyone till the life estate shall fall in. It is evident to me that Mrs. Hudlow and L. B. Sanders thought that the bankrupt had no present interest in the estate which would be assets in bankruptcy, as the bankrupt himself claims he thought. If she told her former counsel of the will and he examined it, he must have thought the same. It is clear that she knew of the will and its contents and had not forgotten about it. It is also clear that she knew from her counsel that no assets had been scheduled, though she also knew the estate was a large one: the executor says $200,000. If, as she now claims, it was a fraud not to schedule this interest in the estate, knowledge of the facts did not come to her since the discharge. She has only gotten advice on the law. That she should have gotten when she learned that no assets were scheduled. It has now been over three years since the adjudication and two years since the discharge, and no doubt credit has been obtained by the bankrupt on the strength of it. The prejudice to such new creditors by revoking a discharge was no doubt in mind when the stringent provisions of section 15 were framed. I do not think Mrs. Hudlow can maintain a petition to revoke.

The Atlanta Athletic Club makes no showing at all by any official as to its diligence or knowledge. Its attorney testifies uncertainly that he had no knowledge of the will, while the bankrupt testifies he told him about it before the bankruptcy. But, if the attorney is right and the bankrupt wrong, the burden on the Atlanta Athletic Club is not carried.

There being no petitioner competent to complain, it is unnecessary to decide whether the bankrupt committed a fraud and concealed his assets. Unquestionably he knew of his interest in the estate, and did not intend it to be administered in bankruptcy. The narrow question is whether he realized that it was vested rather than contingent and was assets for creditors. He had tried to borrow on it from the executor and had been told he had no present interest, and his certified accountant expressed the same opinion. The bankrupt and his attorney are in conflict as to what occurred when the latter prepared the schedule in bankruptcy. Of course in such a case the property should have been scheduled and the question left to the court. But to misjudge a question of law need not be fraud. Since Mrs. Hudlow, against whom he was taking the bankruptcy, knew all about the will and his father's estate, as did his brother who was his chief creditor, it is not very likely the bankrupt could have expected to conceal his interest from these two. Whether on such an argument I should disagree with the master who heard and saw the witnesses I need not decide, because as above concluded I think no one is entitled to revoke the discharge.

But the remaining prayers of the petition can be granted and justice be done to all. Whether the interest in the estate was omitted from the schedule by mistake of law or in fraud, it is an administrable asset and should be administered. A bankrupt is given his discharge on surrender of his property. If afterwards more property comes to light, it belongs to his creditors till they are satisfied. It is urged that no creditor can now prove a claim because of the limitation in section 57n, as amended May 27, 1926, § 13, 44 Stat. 666 (11 U.S.C.A. § 93 (n). While this position has been sustained elsewhere, in this circuit it is held that the court under such circumstances as here exist may on reopening the estate set a reasonable time in which claims may be proved. Williams v. Rice (C.C.A.) 30 F.(2d) 814.

It is accordingly ordered that the petition in so far as it seeks to revoke the discharge be denied, but in so far as it seeks to reopen the case to administer the assets be granted, and that the cause be re-referred to the referee with directions to call a creditors' meeting to elect a trustee, and that claims be allowed to be proven within a period of ninety days after this date, or, if an appeal be taken, within ninety days from the filing of a mandate affirming it.