In the Matter of Eva McELMURRY, Debtor;

**CONTINENTAL BUILDERS,**
**Appellee-Plaintiff,**

v.

**Eva L. McELMURRY,**
**Appellant-Defendant.**

**82-0369-CV-W-1.**
**Bankruptcy No. 80-00826-3.**
**Adv. No. 81-1217.**

United States District Court,
W. D. Missouri, W. D.

Oct. 1, 1982.

J. Nelson Happy, Happy, Cooling & Herbers, Kansas City, Mo., for appellee-plaintiff.

Maurice B. Soltz, Kansas City, Mo., for appellant-defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, Senior District Judge.

### I.

This matter comes before the Court on an appeal from a Final Judgment of the Bankruptcy Court revoking appellant's discharge in bankruptcy. For the reasons briefly stated below, we will reverse the revocation of the Bankruptcy Court and reinstate the discharge of the debtor.

On March 21, 1980, appellant filed, *pro se,* a voluntary petition in bankruptcy for relief under Chapter 7 of the Bankruptcy Code. By Order of the Court, May 6, 1980 was fixed as the date for the first meeting of creditors and June 6, 1980 was fixed as the last date for filing complaints objecting to discharge. The first meeting of creditors was convened on schedule but was adjourned and continued until June 10, 1980, to allow debtor time to obtain proper representation.

When the first meeting of creditors reconvened on June 10, 1980, debtor testified regarding certain real properties that did not appear on her schedules, namely, properties located at 1109 Cleveland, Kansas City, Missouri, and 1805 Spruce, Kansas City, Missouri. Debtor apparently testified that she had sold these properties and no longer owned any interest in them.

Although the first meeting of creditors was continued for over one month, a discharge hearing was scheduled on June 25, 1980, and debtor's attorney was the only party present. Since debtor did not appear at this discharge hearing, the Bankruptcy Court entered an Order for debtor to show cause why her petition should not be dismissed. The discharge hearing date was reset for July 16, 1980. Allegedly only the debtor was given proper notice of this July 16, 1980 hearing date. At this hearing the Court, having heard no objections, granted the debtor discharge orally.

After learning of the oral discharge, the trustee filed a complaint to set aside the discharge on the basis that the discharge hearing was held without notice, and that the debtor may have concealed assets. After a plenary evidentiary hearing on December 8, 1980, at which the Bankruptcy Court orally stated its findings of fact and conclusions of law, the Court entered a judgment denying the trustee's complaint objecting to discharge. Through all of this, appellee did not investigate the status of the properties at 1109 Cleveland and 1805 Spruce nor did it attempt to bring any facts concerning these properties to the attention of the trustee or the Court. Appellee did not uncover any evidence that would support an application to file a complaint objecting to discharge out of time nor did it file such an application.

In accordance with § 524 of the Bankruptcy Code, the Court entered an order of discharge on April 15, 1981. Subsequent proceedings disclosed that on June 29, 1981, appellee searched real estate records and discovered, allegedly for the first time, that appellant was the record owner of 1109

Cleveland, a property that had not been listed on debtor's schedules. On July 6, 1981, appellee requested the Bankruptcy Court to revoke the discharge of appellant pursuant to 11 U.S.C. § 727(d)(1) on the ground that appellant obtained the discharge through fraud and concealment of her ownership of the property. After notice and hearing, the Bankruptcy Court revoked the discharge. Appellant then filed this appeal.

After examining the files and record in this case, as well as the applicable law, we have concluded that the decision of the Bankruptcy Court should be reversed, and the discharge granted debtor on April 15, 1981, should be reinstated. Specifically, reversal is required on two separate grounds: (1) appellee failed to carry the burden on an element necessary for revocation under § 727(d)(1), namely, proof that appellee did not know of the fraud of appellant before the granting of discharge and (2) appellee was guilty of laches because it did not diligently investigate facts that had been brought to its attention at least as early as the first meeting of creditors.

■ The Bankruptcy Court heard no evidence and made no findings in regard to appellee's lack of knowledge of appellant's fraud before discharge. Section 727(d) states, *inter alia:*

> On the request of the trustee or a creditor, and after notice and a hearing, the court shall revoke a discharge under subsection (a) of this section if—

> (1) such discharge was obtained through the fraud of the debtor, *and the requesting party did not know of such fraud until after the granting of such discharge.* (emphasis added)

For appellee to prevail under § 727(d)(1), it has the burden of proving by sufficient evidence every element necessary for revocation, *In re Cuthbertson,* 202 F. 266, 270 (D.C.S.D.1912), and that includes a showing by the requesting party that they did not know of the fraud until after the granting of the discharge. *4 Collier on Bankruptcy,* ¶ 727.15, p. 727–99 (15th ed.).

■ Having failed to carry its burden under § 727(d)(1), the appellee is not entitled to a revocation of discharge. Although we believe this alone is enough for reversal, the second ground for reversal is even more compelling—the record establishes that appellee was guilty of laches and therefore the revocation should not have been granted. The Bankruptcy Court, however, failed to consider the equitable defense of laches.[1]

■ In her suggestions in support of her answer and again in her trial brief, appellant argued that the appellee was guilty of laches because appellee was not diligent in investigating facts disclosed to the appellee at the first meeting of creditors. We agree.

The record establishes that appellee was aware as early as June 10, 1980 that appellant had at one time had some interest in the properties located at 1109 Cleveland and 1805 Spruce and that there was some question in appellee's mind as to the current

---

1. Although the language of the new Bankruptcy Code § 727 differs slightly from its counterpart, § 15 of the old Bankruptcy Act, we think the equitable defense of laches is available under § 727 to prevent revocation under the proper circumstances. Old § 15 stated, *inter alia:*

   The court may revoke a discharge upon the application of a creditor, the trustee, the United States Attorney, or any other party in interest, *who has not been guilty of laches,* filed at any time within one year after a discharge has been granted, if it shall appear (1) that the discharge was obtained through the fraud of the bankrupt, that the knowledge of the fraud has come to the applicant

   since the discharge was granted, and that the facts did not warrant the discharge; ... (Emphasis added)

   Under the old Act, the party seeking revocation had the burden of proving the absence of laches, *In re Cuthbertson, supra.* The new Code section, 727(d)(1), contains no explicit reference to laches so it appears that the moving party no longer has to prove absence of laches as an element of revocation. But laches is still available to debtor in the form of an equitable defense. Thus, the standards stated in cases decided under section 15 should be considered in determining the existence of laches.

status of ownership. In its brief before this Court, appellee admits that "it is true that Plaintiff suspected intentional concealment and fraudulent transfers because of debtor's evasive tactics" but "it was not until June 29, 1981, after the discharge was granted that the Plaintiff received documentary evidence which demonstrated that fact." Thus, appellee was informed of facts as early as June 10, 1980 which made appellee suspicious and put appellee on notice of the need, at the very least, to examine the available public records. With reasonable diligence, involving the simple matter of searching real estate records, the appellee would have been possessed of the facts that were the basis of the revocation.

With this information in hand at a reasonably early date, appellee could have made an application for enlargement of time in which to file objections to debtor's discharge. This would have been the proper procedure, such a filing out of time can be granted upon a showing that the untimeliness was caused by "excusable neglect." *In re Capshaw,* 423 F.Supp. 1388, 1390 (E.D. Va.1977); *In re Peacock,* 14 B.R. 360, 361 (Bkrtcy.N.D.Ohio 1981); *In re Klayer,* 13 B.R. 542, 544 (Bkrtcy.W.D.Ky.1981); *In re Rapino,* 11 B.R. 651, 656 (Bkrtcy.E.D.N.Y. 1981).

Appellee, however, failed to file objections to discharge and then proceeded to seek revocation of discharge after the discharge was granted. Appellant has argued all along that revocation is barred because of laches and we agree. A party seeking revocation may be guilty of laches by failing properly to file objections to discharge prior to the entry of the discharge order: *In re Knofsky,* 20 F.2d 206, 207 (W.D.Pa. 1927); *In re Capshaw, supra; In re Garfinkle,* 2 B.R. 65 (Bkrtcy.S.D.N.Y.1979); by failing to act within a reasonable time after obtaining knowledge of facts which may otherwise be grounds for revocation of discharge; *In re Dobash,* 10 B.R. 809, 812 (Bkrtcy.W.D.Wis.1981); or by failing to show proper diligence in attempting to dis-

cover the necessary facts before discharge; *In re Sanders,* 20 F.Supp. 98, 100 (N.D.Ga. 1937).

The factual circumstances of other cases are particularly relevant to the present case. In *In re Oleson,* 110 F. 796 (N.D.Iowa 1901), the bankrupt set forth in his schedules certain articles of personal property which were covered by a chattel mortgage executed by the bankrupt to his father. This mortgage covered almost all of the bankrupt's assets. None of the creditors questioned the bankrupt concerning this mortgage, nor did any of them check into its validity. After the discharge was granted, creditors sought revocation on the ground that the mortgage was fraudulently given without consideration. The Court, in denying the application for revocation, noted that there is "apparent in the practice under the bankruptcy act a tendency, on the part of creditors, to take no action in the case until the matter of discharge is reached, and then to rely upon matters which should be investigated during the prior proceedings." The creditors were not diligent in investigating the fraud even though they "certainly were put upon notice if they purposed to question its (the mortgage's) validity."

Similarly, in *In re Leach,* 197 F.Supp. 513, 521 (W.D.Ark.1961), the court stated that "The creditors have a duty to ascertain the true financial situation of the bankrupt prior to the discharge and failure to pursue this line of inquiry, if open to them at this time, will make them subject to laches." In short, "the creditor should be diligent in investigating the facts." *In re Upson,* 124 F. 980, 982 (D.C.N.Y.1903).

In the present case, this Court is convinced that the appellee was not sufficiently diligent. All appellee had to do was search the real estate records once they were put on notice of the properties. Appellee was informed of the properties on June 10, 1980 at the first meeting of creditors and allegedly did not look at the real estate records until June 29, 1981, twelve

months later, eleven months after oral discharge, and more than one month after the final order of discharge. This conduct does not meet a reasonable standard of diligence and is in fact so unreasonably dilatory it constitutes laches.

For the foregoing reasons, the Judgment of the Bankruptcy Court revoking appellant's discharge will be reversed and the discharge of debtor will be reinstated.

Accordingly, it is

ORDERED (1) that the Judgment revoking appellant's discharge is hereby reversed. It is further

ORDERED (2) that the discharge granted debtor on April 15, 1981 is hereby reinstated.