**In re Charles W. VEREEN, Debtor.**

**Robert F. ANDERSON, Trustee, Plaintiff,**

**v.**

**Charles W. VEREEN, Defendant.**

**Bankruptcy No. 96–78369–W.
Adversary No. 97–80199.**

United States Bankruptcy Court,
D. South Carolina.

Nov. 7, 1997.

Robert F. Anderson, Columbia, SC, for Plaintiff.

James D. Cooper, Jr., Columbia, SC, for Defendant.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

Before the Court is the Motion for Summary Judgment by the Defendant, Charles W. Vereen ("Debtor", "Defendant" or "Mr. Vereen").[1] For purposes of this motion, the Defendant submitted evidence in the form of excerpts from transcripts of the 11 U.S.C. § 341[2] meeting, the continued § 341 meeting, a hearing before this Court on February 4, 1997, and portions of several examinations taken under Bankruptcy Rule 2004. The Plaintiff, Robert F. Anderson, Mr. Vereen's Chapter 7 Panel Trustee ("Trustee" or "Mr. Anderson") submitted a portion of the transcript of the continued § 341 meeting, a portion of the Section 2004 examination of Mark Groves, and an affidavit of the Trustee. Based upon the evidence presented and a review of the Court's file, the Court makes the following Findings of Fact and Conclusions of Law.[3]

---

1. This motion was originally filed as a Motion to Dismiss, but upon hearing was converted to a Motion for Summary Judgment pursuant to FRCP 12(b) made applicable hereto by Bankruptcy Rule 7012.

2. Further references to the Bankruptcy Code, 11 U.S.C. § 101, et seq., shall be by section number only.

3. The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

## FINDINGS OF FACT

The Debtor filed bankruptcy under Chapter 7 on November 14, 1996 and Mr. Anderson was appointed as his Chapter 7 panel trustee. At the time, the Debtor's primary creditors were the Estate of Michael Nash and the Estate of Zachary Steinke. Mr. Nash and Mr. Steinke were killed at a bungee jumping business operated in Myrtle Beach, S.C. called Beach Bungee, Inc., a South Carolina Corporation owned by the Debtor and others. The Estates of Mr. Nash and Mr. Steinke obtained a Twelve Million Dollar judgment on October 27, 1995 against the Debtor, Beach Bungee, Inc., Carolina Land Holding Company of Little River, Inc., Harold Morris ("Mr. Morris"), and Billy Player.

In April of 1996, Mr. Morris filed Chapter 7 and Mr. Anderson was appointed as his Chapter 7 trustee. Mr. Morris disclosed his interest in Beach Bungee, Inc. and the Master's Club Venture in his bankruptcy schedules. Mr. Anderson declared the case to be an "asset" case and conducted the Rule 2004 examination of Mr. Morris on May 14, 1996. There were no complaints filed to object to the discharge of Mr. Morris or to the dischargeability of any particular debts and on September 27, 1996, Mr. Morris received his discharge. On March 5, 1997, Mr. Anderson filed a complaint to revoke Mr. Morris' discharge alleging a failure to disclose assets including the same Certificate of Deposit, the New Provident Rabbi Trust and the Vereen Inter Vivos Trust mentioned in the complaint in this adversary proceeding. However after a status hearing on September 5, 1997, the Court entered an order for voluntary nonsuit for failing to effectuate service of process upon Mr. Morris.[4]

After Mr. Vereen's Chapter 7 petition was filed on November 14, 1996, the Trustee conducted a brief § 341 meeting of creditors on December 20, 1996 and declared the case to be an "asset" case. The Trustee continued the § 341 meeting by conducting a Rule 2004 examination of the Debtor on January 30, 1997. Counsel for the Estates of Mr. Nash and Mr. Steinke were present at both examinations. Additionally, at a hearing on February 4, 1997 on the Trustee's objection to the Debtor's claim for exemptions, the Court continued the hearing to give the Trustee an opportunity to conduct further investigations. At that hearing, the Trustee stated that "we may be amending the objection to exemptions to include violations of, or attempts to use these assets to violate various federal, civil and criminal statutes, at least section 727 as we get on."

On January 28, 1997, the Trustee conducted the deposition of the Debtor's business partner, Billy Player. On February 10, 1997, the Trustee conducted the deposition of the Debtor's CPA, Michael Shea. On February 18, 1997, the Trustee conducted the deposition of Mark Groves, an attorney and CPA who was consulted by the Debtor and his business partners about asset protection devices.[5]

February 18, 1997 was the deadline to file complaints objecting to discharge under § 727(c) pursuant to Rule 4004 of the Federal Rules of Bankruptcy Procedure and objecting to the dischargeability of particular debts under § 523 pursuant to Rule 4007 of the Federal Rules of Bankruptcy Procedure. Neither the Trustee nor the Estates of Mr. Nash and Mr. Steinke timely filed such complaints or motions for extensions of time to file a complaint.

On March 5, 1997, the Trustee filed a complaint objecting to the Debtor's discharge pursuant to § 727(c). On May 16, 1997, upon motion of the Debtor, this Court entered an order dismissing the § 727 complaint as not being timely filed. On June 11, 1997 the

---

4. Previously, a letter from Mr. Anderson to the Deputy Clerk of Court advising as to the status of the summons and complaint stated in part as follows: "If at all possible, I would like to leave the above case open, and unserved: I do not yet have sufficient Bankruptcy Rule 9011 evidence to serve the suit; however, I had a statute of limitations which required that it be filed at the time that I did." The letter is dated June 26, 1997.

5. The Trustee has additionally taken the depositions of Clark Vereen, Naomi Vereen, Patricia Vereen, Andre Michaud, William Allen and Jack Kendree in this case and the depositions of Jay Player, Robert Player and Edwin Tucker in the Chapter 7 case of Harold Morris.

Debtor received his discharge. On June 25, 1997, the Trustee filed this adversary proceeding to revoke the Debtor's discharge pursuant to § 727(d)(1) upon the grounds that the Debtor's discharge was obtained through fraud. The causes of action alleged in this § 727(d)(1) complaint for the most part reiterate the allegations of the Trustee's § 727(c) complaint but characterize them as fraud in obtaining the discharge. The Debtor takes the position that if there was any fraud or fraudulent activities, the Trustee knew or should have known about it prior to February 18, 1997, the deadline to file complaints objecting to discharge and therefore this adversary proceeding should also be dismissed.

### CONCLUSIONS OF LAW

Section 727(d) provides, in part:

(d) On request of the trustee, or a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

11 U.S.C. § 727(d). The Debtor contends that the Trustee in this action is not entitled to proceed with this adversary action to revoke the Debtor's discharge because as a matter of law the Trustee had knowledge of the Debtor's alleged wrongdoings before the deadline for objecting to the discharge but that he failed to timely act. The Trustee contends that the provisions of § 727(d)(1) do not preclude this action because the level of his knowledge on or before the deadline for filing a complaint objecting to discharge pursuant to Rule 4004 was insufficient to trigger the prohibition of the action under § 727(d)(1).

In order to resolve this motion, the Court must first decide what degree of knowledge is sufficient to invoke the prohibition of § 727(d)(1), an issue of first impression within this District, and secondly, the Court must

decide if, as a matter of law, the Trustee had the required degree of knowledge prior to the deadline to object to the Debtor's discharge so as to prohibit the maintenance of this action after the discharge has been granted.

 Fourth Circuit courts have held that § 727(d) is to be construed strictly against any objector and liberally in favor of the debtor. *In re Lyons,* 23 B.R. 123 (Bkrtcy.E.D.Va.1982). *In re Howard,* 55 B.R. 580 (Bkrtcy.E.D.N.C.1985). Revocation of a discharge is a "harsh measure" and runs contrary to the general policy of the Bankruptcy Code giving Chapter 7 debtors a fresh start. *In re Kaliana,* 202 B.R. 600 (Bkrtcy. N.D.Ill.1996). The Bankruptcy Code requires the Plaintiff in a revocation action to bear the burden of proving that he or she "did not know of such fraud until after the granting of such discharge."[6] A number of bankruptcy courts in various jurisdictions have dealt with the issue of "knowledge." In *Mid–Tech Consulting v. Swendra,* 938 F.2d 885 (8th Cir.1991), the Court discussed the term, "did not know."

The issue thus becomes the meaning of the "did not know" requirement of § 727(d)(1). Mid–Tech urges us to take a narrow approach and hold that a creditor must know all of the facts that constitute the alleged fraud before dismissal of a § 727(d)(1) action is appropriate. [citations omitted]. The Swendras, on the other hand, urge us to take a broader approach and hold that dismissal under § 727(d)(1) is proper where the creditor knows of facts that indicate a possible fraud. [citations omitted].

We agree with the Swendras and the majority of the courts that have addressed this issue, and hold that dismissal of a § 727(d)(1) revocation action is proper where, before discharge, the creditor knows facts such that he or she is put on notice of a possible fraud. 938 F.2d at 888.

In *In re Richard,* 165 B.R. 642 (Bkrtcy. W.D.Ark.1994), the Court noted that the

---

**6.** "A party requesting revocation of a discharge has the burden of proving its lack of knowledge of the fraud before discharge, and failure to carry this burden is fatal to the party's case." *Collier on Bankruptcy,* 15th Ed. (Revised, 1997), page 727–20, and cases cited therein.

plaintiff "had the means to obtain all of the facts it presented to the court prior to the time for filing an objection to discharge. Since all of the facts were available to plaintiff prior to the time for objecting to discharge, it cannot now seek revocation of the discharge." 165 B.R. at 643. Also, in *In re Cochard*, 177 B.R. 639 (Bkrtcy.E.D.Mo.1995), the Court, relying on the rationale of the *Swendra* case, *supra*, stated that the creditor had an "affirmative duty" to investigate before the discharge is granted if the creditor "so much as could have known of the alleged fraud," stating, "[t]he burden is on the creditor to investigate diligently any possible fraud before discharge." 177 B.R. at 643. See also *Continental Builders v. McElmurry*, 23 B.R. 533 (W.D.Mo.1982), holding that the creditor must show "proper diligence" in attempting to discover the necessary facts before discharge. In *McElmurry*, the Court noted that the [plaintiff] was aware that the [defendant] had an interest in some property that was not reflected on the schedules and that there was some question in [plaintiffs] mind as to the current status of ownership. The Court states that:

> In its brief before this Court [plaintiff] admits that "it is true that Plaintiff suspected intentional concealment and fraudulent transfers because of debtor's evasive tactics" but "it was not until June 29, 1981, after the Plaintiff received documentary evidence which demonstrated that fact." ... With reasonable diligence, involving the simple matter of searching real estate records, the [plaintiff] would have been possessed of the facts that were the basis of the revocation.

*Continental Builders v. McElmurry*, 23 B.R. at 536. The Court goes on to note that with the information the plaintiff had in hand, he could have made an application for enlargement of time in which to file an objection to debtor's discharge.[7]

Courts within the Eleventh, Seventh, and Second Circuits have also considered this issue. In *In re Benak*, 91 B.R. 1008 (Bkrtcy. S.D.Fla.1988), the trustee failed to demonstrate that he lacked knowledge of transactions on which he based allegations of fraud.

7. See Bankruptcy Rule 4004(b).

The Court, citing the diligence standard as set forth in *McElmurry* case, *supra*, found that the trustee failed to show "proper diligence in attempting to discover the necessary facts before discharge." 91 B.R. at 1009–1010. See also, *In re Topper*, 85 B.R. 167 (Bkrtcy.S.D.Fla.1988). In *In re Jones*, 71 B.R. 682 (S.D.Ill.1987), the Court stated, "A party may be guilty of laches by failing to show proper diligence in attempting to discover the necessary facts before discharge." 71 B.R. at 685. The Court in *In re Arianoutsos*, 116 B.R. 116 (Bkrtcy.N.D.Ill.1990) applied the "should have known" standard.

In *In re Kaliana*, 202 B.R. 600 (Bkrtcy. N.D.Ill.1996), the Court, citing *Arianoutsos*, said:

> The objector need not be aware of all facts of the fraud before the discharge [citations omitted] If the creditor could have known of the alleged fraud, it has an affirmative duty to so investigate before the discharge is granted ... The burden is on the creditor to diligently investigate any possible fraud before discharge. 202 B.R. at 604.

The Plaintiff in *Kaliana* had knowledge of assets of the estate that were omitted from the schedules, and the Court said that such knowledge put the plaintiff on inquiry and should have put it on notice that the original schedules might be false and incomplete.

Courts in the Second Circuit have applied the test of whether or not the creditor exercised "due diligence." *In re Kirschner*, 46 B.R. 583 (Bkrtcy.E.D.N.Y.1985); See also, *In re Puente*, 49 B.R. 966 (Bkrtcy.W.D.N.Y. 1990).

A court in the Fourth Circuit has also addressed this issue. In *In re Lyons*, 23 B.R. 123 (Bkrtcy.E.D.Va.1982), the trustee filed a revocation action under § 727(d)(1), (d)(2), and (d)(3). The debtor failed to list an asset of the estate on his schedules; however he informed the trustee of the asset at the meeting of creditors. The trustee asked for and received an extension of time to file an objection to discharge, but the extension expired before the revocation action was commenced. The Court refused to revoke the

discharge even though it found that grounds probably existed to *deny* the debtor a discharge under § 727(a)(2), stating:

> The trustee was fully aware of the debtor's conduct relative to the disposition of his assets prior to the granting of the discharge. To revoke a discharge under § 727(d)(1), the requesting party must not have known of such fraud prior to the granting of the discharge. *Here the conduct of the debtor was known to the trustee.*

*In re Lyons*, 23 B.R. at 125–126 (emphasis added).[8]

 Upon a review of § 727 and the within cited authorities, this Court is of the opinion that in a revocation action under § 727(d)(1), the plaintiff must show due diligence in investigating and responding to possible fraudulent conduct once he or she is aware of it or is in possession of facts such that a reasonable person in his or her position should have been aware of a possible fraud. This standard is consistent with case law from other jurisdictions and is consistent with the goal of Chapter 7 to grant debtors a fresh start. This is not to say that a trustee is required to suspect that every debtor is committing fraud in his schedules. As a general rule, the trustee is entitled to rely on the truthfulness and accuracy of the debtor's schedules and is not required to assume that the debtor is lying. See *In re George*, 179 B.R. 17 (Bkrtcy.W.D.N.Y.1995); *In re Magnuson*, 113 B.R. 555 (Bkrtcy.N.D.1989). However, once the trustee is in possession of facts that would put a reasonable person on notice of a possible fraud, he has a duty to diligently investigate to determine if grounds exist for the denial of the Debtor's discharge and if so to timely file a complaint.

 Having determined the standard to apply to a creditor's or trustee's knowledge in revocation actions under § 727(d)(1), the Court turns to the facts of this case.

When the Debtor's business partner and codefendant in the Nash/Steinke judgment, Harold Morris, filed his Chapter 7 petition in April of 1996, Mr. Anderson was appointed trustee and became familiar with the business relationships between Mr. Morris and Mr. Vereen, and thus related assets and liabilities. Mr. Morris's schedules reflected his interest in Beach Bungee, Inc. and the Master's Club Venture. Mr. Anderson along with counsel for the Estates of Mr. Nash and Mr. Steinke conducted the Rule 2004 examination of Mr. Morris on May 14, 1996. Mr. Anderson also took a number of other depositions or otherwise sought to discover the facts associated with Mr. Morris' assets and business dealings, including those with Mr. Vereen. He took the depositions of Jay Player and Robert I. Player on November 1, 1996. On December 17, 1996, this Court signed an order allowing Mr. Anderson to take the Rule 2004 examination of Billy Player to be conducted on January 14, 1997. The Court also allowed Mr. Anderson in that case to reimburse out-of-pocket expenses associated with copying transcripts from depositions in the possession of the attorney for the Estates of Mr. Nash and Mr. Steinke. The invoice submitted to Mr. Anderson is dated December 27, 1996 and includes the deposition of William Player taken June 22, 1994, the deposition of Harold Morris taken July 26, 1994, the deposition of Charles Vereen taken September 20, 1994, the transcript of record dated October 10, 1996, the transcript of record dated October 24, 1996, the deposition of Scott Frierson taken November 22, 1996 and the deposition of Stephen Gwin taken November 22, 1996. On January 31, 1997, the Court entered another order allowing the deposition of Mark Groves, Esquire, to be taken on February 13, 1997.

Mr. Vereen's Chapter 7 petition was filed on November 14, 1996 and Mr. Anderson was appointed as his Chapter 7 Trustee on November 15, 1996. Mr. Anderson conducted the § 341 meeting of creditors on December 20, 1996 at which time the Debtor appeared to answer in a direct fashion, the questions asked of him. At that time in response to the Trustee's questions, the Debtor admitted

---

8. The Court also went on to say that a revocation action based on § 727(d)(2) and (3), although containing no language requiring the knowledge of any fraudulent conduct, "does not give a party in interest, who has the knowledge of the probable wrongdoing the privilege to wait until after a discharge is granted to ask the court to revoke the discharge." 23 B.R. at 126.

his interest in a number of entities which had not been listed in the schedules. The meeting was continued to a Rule 2004 examination on January 30, 1997. At the January 30, 1997 examination, among other things, the Debtor in response to the Trustee's questions clearly identified Mark Groves and Garry Sutton as two asset protection attorneys with whom he had consulted and whose advice he had followed in regard to setting up devices to protect or shield his assets from creditors, which appeared to include offshore trusts and other "asset protection" instruments. Mr. Anderson had objected to the Debtor's claim for exemptions on January 9, 1997 and at the hearing on February 4, 1997 on his objection, he stated that he might have to amend his objection because of federal civil and criminal violations and also that he may object to the Debtor's discharge pursuant to § 727(c).

On February 10, 1997, the Trustee conducted the deposition of the Debtor's CPA, Michael Shea, who confirmed that he had been advised by Mr. Vereen that he had transferred his interest in several corporations to a trust in order to shelter his assets. The Trustee had planned to conduct the deposition of Mark Groves, one of the attorneys and CPA's who was consulted by the Debtor and his business partners about asset protection, on February 13, 1997 in Atlanta, Georgia; however, while the Court can not determine why, it appears that the actual deposition took place in Columbia, South Carolina on February 18, 1997, the last day to file a complaint objecting to discharge. From the evidence presented, the Court likewise cannot determine at what time of day the deposition convened and ended. However, the Trustee acknowledges that he acquired the requisite knowledge to oppose the Debtor's discharge at this deposition.

The Court has reviewed excerpts from transcripts of the meeting of creditors, several § 2004 depositions, and a transcript of a hearing before this Court, all undertaken on or before February 18, 1997. While the Trustee may not have had every fact concerning the various entities which he says were omitted from the schedules, the Court finds that the Trustee was, on or before February 18, 1997, in possession of sufficient facts in order to put him on notice of possible fraudulent conduct by the Debtor. The Court further finds that the Trustee's questions and actions throughout his investigations indicate an advanced state of knowledge and indicate at the least, that he was very suspicious prior to February 18, 1997 that the Debtor had committed fraud. The Court is convinced that on or prior to February 18, 1997, the Trustee possessed the facts which serve as the basis of the revocation action. For example, at the meeting of creditors on December 20, 1996, the Trustee asked the Debtor about several corporations, a trust, and a limited partnership he holds or in which he held an interest. He stated that "I've got about eight pages of corporations you own or owned or have interest in or are a registered agent in . . . And we're going to probably spend a day or two going through everything you own, may have forgotten you owned or you may have transferred out since the death at the Beach Bungee jumping place." At that time the Debtor had not listed eight pages of corporations in which he held an interest. Additionally, the corporations and trusts mentioned in the complaint seeking a revocation of Mr. Vereen's discharge; Vereen Inter Vivos Trust, East Cambridge Limited Partnership, Five Star Management Corporation, Charles W. Vereen Homes, Inc., Heather Lakes, Inc., Carolina Shores Realty, Inc., Creative Development, Inc., New Provident Rabbi Trust, Moss Masters Club L.L.C., Masters Club and Sports Properties, Inc., were the same corporations that Mr. Anderson knew about and mentioned at the § 341 meeting on December 20, 1996.

The 2004 deposition of a business partner of the Debtor, Billy Player, was taken on January 28, 1997. Mr. Player flatly stated that the Debtor "was going to hide his assets just like Mr. Morris did." From page 35 of the examination:

Q. What sort of things was he talking about hiding?

A. All of his assets, his land and —

Q. So he told you he was going to do that?

A. Oh, yes, sir.

From page 39 of the examination:

Q. . . . Do you think that Mr. Morris and Mr. Vereen are still cooperating and are jointly trying to hide the assets?

A. I'm sure they are.

By the time of the continued § 341 meeting/2004 examination on January 30, 1997, the Trustee had hired a CPA and had him present at this examination. In addition to questioning the Debtor about his prior financial statements and his interest in various corporations and the limited partnership, the Trustee questioned the Debtor about asset protection trusts and the placement of money offshore in the Bahamas. Mr. Vereen admitted the names of the asset protection attorneys who formed these companies, including the name of Mark Grove. Mr. Vereen testified that he was receiving money from Heather Lakes, Inc., he discussed his ownership interest in the different companies and he admitted he was trying to shelter his assets and named the parties who helped him.

At a hearing before this Court on February 4, 1997, the Trustee stated that East Cambridge Limited Partnership "is the entity, or at least one of the entities, into which the Debtor, after the bungee jump accident, transferred substantially all of his assets into." . . . . "Your Honor, we may be amending the objection to exemptions to include violations of, or attempts to use these assets to violate various federal, civil and criminal statutes, at least section 727 as we get on."

At the 2004 examination of the Debtor's CPA, taken on February 10, 1997, the Trustee reviewed information which confirmed the transfer of substantially "all the corporations" to a trust which benefitted the Debtor's children. The Trustee also asked the CPA about possible "shifting of monies" to non-American jurisdictions.

Finally, in the 2004 examination of Mark Groves on February 18, 1997, Mr. Groves admitted that he advised the Debtor to make transfers to protect his assets and apparently provided some details of the advice and transactions.

The above information, while not necessarily giving the Trustee absolute proof of fraud, certainly gave the Trustee a knowledge of possible fraudulent conduct. The Trustee contends that he could not bring an action to challenge the Debtor's discharge until after February 18, 1997,[9] on which date he had sufficient facts constituting the fraud because he would otherwise be exposing himself to a Rule 11 violation charge. Even if this were a concern, the Trustee could have moved under Rule 4004(b) for an extension of time to file a complaint objecting to the discharge. The facts at his disposal on or before February 18, 1997 would certainly have given the Court grounds to grant an extension of time.

Finally, the Court notes that the June 25, 1997 complaint seeking a revocation of Mr. Vereen's discharge is for the most part a restatement of the untimely filed March 5, 1997 complaint asserted by the Trustee to object to Mr. Vereen's discharge. For the most part the revocation complaint alleges no new facts but adds language that the transactions in question were fraudulently concealed from the Trustee and that Mr. Vereen received his discharge through fraud.[10] Additionally, paragraphs 59 and 60 of the June 25, 1997 complaint state very specifically that the Trustee learned about the transactions surrounding the February 1, 1996 transfer of $61,308.85 from a letter of credit with First Union National Bank secured by a certificate of deposit, at the continued first meeting of creditors on January 30, 1997. Therefore, the causes of action which allege that this transaction was fraudulently concealed from the Trustee must be dismissed.

### CONCLUSION

The Court, upon motion, shall render summary judgment "if the pleadings, depositions,

---

9. Paragraph 53 of the June 25, 1997 complaint seeking the revocation of Mr. Vereen's discharge affirmatively states that February 1, 1997 was the date in which Mr. Anderson learned of the fraudulent activities. While Mr. Anderson's affidavit asserts that this date was a "typo", other paragraphs of the complaint refer to the information obtained by the Trustee at Mr. Vereen's 2004 examination on January 30, 1997.

10. This additional language is not included in the Twelfth cause of action and therefore dismissal as to this cause of action is warranted without regard to the other reasons cited herein.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [11] As shown above, there is no genuine issue as to a material fact and the Debtor is entitled to a judgment as a matter of law. The Court is not unmindful of the fact that the Trustee in this case has vigorously pursued investigating the Debtor and the allegations asserted in the June 25, 1997 complaint indicate serious fraudulent activities on the part of the Debtor. However, the Court cannot ignore the requirements of § 727(d)(1) which require diligence not only in investigation but in timely acting to oppose discharge. The Court cannot allow a revocation action to continue when it appears as a matter of law that the Trustee had sufficient knowledge of the Debtor's alleged fraud prior to the discharge. For these reasons, the Court will grant the Debtor's Motion for Summary Judgment and dismiss this adversary proceeding.[12]

**AND IT IS SO ORDERED.**

**11.** FRCP 56, made applicable herein by Bankruptcy Rule 7056.

**12.** The Court notes that the Trustee may still pursue a recovery of the assets of the Debtor for the benefit of the estate and that criminal sanctions or other remedies may exist for bankruptcy fraud.