In Re Myron F. TOPPER, Debtor.

Gui L.P. GOVAERT, Trustee, Plaintiff,

v.

Myron F. TOPPER, Defendant.

Bankruptcy No. 87–01830–BKC–SMW.
Adv. No. 88–0089–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

April 28, 1988.

Ronald G. Neiwirth, Miami, Fla., for Trustee.

Gui L.P. Govaert, Miami, Fla., trustee.

Francis T. Ryan, Riviera Beach, Fla., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court upon the complaint of the trustee for revocation of the debtor, Myron F. Topper's (the "debtor") discharge, and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

In March, 1987, the debtor formed a Florida corporation called "New York Hotel Drug, Inc." ("NYHD") to own a drug store in New York City. The debtor's wife was listed as a 50% shareholder. The other 50% of the stock is owned by Howard Maltz and his wife, Eileen (the "Maltz"). Since January of 1987, the debtor and the Maltz' had been discussing the opening of a drug store in a hotel in New York City; the debtor searched for a location and eventually focused upon the Grand Hyatt Hotel. He proceeded to negotiate a lease, while at the same time negotiating with Maltz with regard to an agreement for the ownership and management of the proposed store.

The debtor's initial investment in NYHD was $40,000, all paid in prior to the filing of his bankruptcy petition. $20,000 was a loan from his mother to him. The other $20,000 reached NYHD's account via a circuitous route, whereby cash was used to purchase a series of money orders from one bank, which were in turn deposited to NYHD's account at another bank. Neither the debtor nor his wife gave any credible explanation of the source of the cash. The Court finds that the entire investment was that of the debtor, Myron F. Topper.

The debtor was an officer and director of NYHD from its inception and worked there full time. Although a stockholder agreement provided that he had a right to collect compensation from NYHD, he neither drew a check for salary in his name nor disclosed his entitlement thereto in his bankruptcy papers. Instead, his wife, who had no right to compensation under the agreement, drew two separate checks weekly; one in her married name, for the amount that the debtor was entitled to, and another in her maiden name. The Court finds that they structured payments in this manner to conceal the debtor's employment by NYHD, which he in turn, failed to disclose to his creditors and the Court.

Furthermore, the stockholders agreement provided for a buy-sell arrangement and for "key man" insurance. Generally, key man insurance is used to fund a buyout of the interest of a deceased or incapacitated stockholder. Here, however, the insurance covers the debtor, rather than his wife, the alleged stockholder.

The debtor was careful to arrange the transaction so that his name did not appear as a stockholder of NYHD. He listed his wife as the stockholder in the Articles of Incorporation he prepared. He repeatedly informed Maltz and their counsel that everything should be in his wife's name, since he had financial problems. However, the debtor and his wife signed an affidavit in a state court lawsuit that the 50% of the stock had been placed in his wife's name "for the convenience of the Toppers". Additionally, he consistently maintained to Maltz that he was the co-owner of NYHD.

Based upon the totality of circumstances presented in this case, the Court finds that the debtor was the beneficial owner of 50% of the common stock of NYHD (held in his wife's name), and was employed by NYHD, both of which the debtor failed to disclose to his creditors.

In May, 1987, the debtor filed a voluntary petition for Chapter 7 relief. In his bankruptcy statement of affairs and schedules, he did not disclose his interest in or employment with NYHD. The bar date for objection to the debtor's discharge or to the dischargeability of a particular debt was September 4, 1987. No objections were filed and the debtor received his discharge by order dated November 4, 1987.

Subsequent to the expiration of the bar date, the trustee received information that the debtor might own an interest in NYHD. Upon investigation, the trustee determined that the debtor held such an interest in NYHD and brought the instant adversary proceeding to revoke the debtor's discharge based upon his having made false oaths in his bankruptcy case.

■ This case is governed by 11 U.S.C. § 727(d)(1), which provides that the Court may revoke a discharge if it "was obtained through the fraud of the Debtor". In general, it must be shown that (a) the discharge was procured by fraud; and (b) sufficient grounds existed which would have prevented the discharge, had they been known and presented in time. *First National Bank of Harrisburg v. Jones (In re Jones)*, 71 B.R. 682, 684 (D.C.S.D.Ill. 1987). In addition, the party requesting revocation of discharge must prove his lack of knowledge of the fraud prior to discharge. *In re McElmurry*, 23 B.R. 533 (W.D.MO.1982); *In re Peli*, 31 B.R. 952 (Bankr.E.D.N.Y.1983).

■ The threshold issue, therefore, is whether or not the trustee lacked notice or knowledge of the debtor's false oaths prior to the discharge bar date. There were no indications in the papers filed by the debtor, or in his subsequent testimony at the 341 meeting, to put the trustee on notice of the debtor's possible interest in or involvement with NYHD. The trustee was only first apprised of these facts shortly after the objection to discharge bar date had passed. The Court finds that the trustee proved that he did not know, nor did he have any reason to know, about the false oaths until after the bar date had passed, thereby satisfying one of the three requirements for revocation.

■ The other two requirements, i.e., that the discharge was procured by fraud, and that independent grounds existed that would have supported a denial of dis-

charge, are likewise supported in the record. The Court finds that the debtor's false oaths constitute a fraud upon the creditors and the Court.

The subject matter of a false oath is "material" and sufficient to bar a debtor's discharge if it impairs the debtor's estate, concerns the discovery of assets, or the existence and/or disposition of the debtor's property. *In re Chalik,* 748 F.2d 616, 618–19 (11th Cir.1984). Thus, a knowing and fraudulent omission from a sworn statement of affairs or schedule, may constitute a false oath sufficient to bar discharge. The Court finds that the debtor intentionally and fraudulently omitted information from his bankruptcy papers in an attempt to hide his beneficial interest in and involvement with NYHD from the Court and the trustee.

The effectiveness of a bankruptcy administration rests in large part on access to a debtor's financial records and on his honesty and candor. The creditors, and not the debtor on their behalf, are entitled to judge for themselves whether an asset has value. It is for this reason that discharges are denied those debtors who fail to meet the standards specified under Section 727. *In re Chalik, supra.* at 618; *see also: Chase Manhattan Bank v. Vogel (Matter of Vogel),* 16 B.R. 546 (Bankr.S.D.Fla.1981); *Raymos v. Collins (In re Collins),* 19 B.R. 874 (Bankr.M.D.Fla.1982); *In re Savel,* 29 B.R. 854 (S.D.Fla.1983); *Bank of Miami v. Espino,* 48 B.R. 232 (Bankr.S.D.Fla.1985), *aff'd* 806 F.2d 1001 (11th Cir.1986).

The Court finds that the debtor has not met the standard of candor, accuracy and integrity necessarily required of a debtor in bankruptcy; he intentionally obscured information and thus obtained his discharge by fraud. Had the true state of affairs been known prior to discharge, he would not have been entitled to a discharge. His discharge, previously granted, is revoked.

A separate Final Judgment of even date has been entered in conformity herewith.