**In re Kenneth L. STEIN, Debtor.**

**BEAR STEARNS & CO., INC. and Sloate, Weisman, Murray & Co., Inc., Plaintiffs,**

v.

**Kenneth L. STEIN, Defendant.**

**Bankruptcy No. 87 B 20589.**
**89 Adv. 6025.**

United States Bankruptcy Court, S.D. New York.

July 20, 1989.

Ballon, Stoll & Itzler, and Bangser & Weiss, New York City, for plaintiffs, Bear Stearns & Co., Inc. and Sloate, Weisman, Murray & Co., Inc.

Charles H. Weintraub, New York City, for defendant, Kenneth L. Stein.

## DECISION ON COMPLAINT SEEKING ORDER TO REVOKE AND DENY BANKRUPTCY DISCHARGE PREVIOUSLY GRANTED.

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The plaintiffs, Bear Stearns & Co., Inc. ("Bear, Stearns"), and Sloate, Weisman, Murray & Co. Inc. ("Sloate"), are brokerage firms who filed a complaint pursuant to 11 U.S.C. § 727(d)(1) to revoke and deny the bankruptcy discharge previously granted to the Chapter 7 debtor, Kenneth C. Stein. The trustee in bankruptcy has joined the plaintiffs in their request.

### FINDINGS OF FACT

1. On December 16, 1987, the debtor, Kenneth C. Stein, filed with this court a petition for relief under Chapter 7 of the Bankruptcy Code. March 8, 1988 was the date fixed for the meeting of creditors pursuant to 11 U.S.C. § 341(a). Notice of this meeting was appropriately given by the clerk of this court to all scheduled creditors in accordance with 11 U.S.C. § 342(a). There is no question that the plaintiffs received timely notice of the meeting of

creditors and the time fixed for filing complaints objecting to discharge pursuant to Bankruptcy Rule 4004 and for the determination of the dischargeability of debts in accordance with Bankruptcy Rule 4007.

2. A trustee in bankruptcy was selected by the United States trustee to administer the debtor's case. The trustee examined the debtor at the meeting of creditors and was informed by the debtor, who is a certified public accountant, that the debtor had no accounts receivable. The debtor also informed the trustee that the debtor's wife controlled the family funds and that he turned his income over to his wife for her management of the family affairs. The debtor also advised the trustee that he planned to file a joint federal income tax return with his wife. However, the debtor submitted to the trustee a *pro forma* income tax return which would not be filed, but which reflected the debtor's share of the joint assets. The plaintiffs did not attend the debtor's meeting of creditors when he was examined by the trustee in bankruptcy. Therefore, the trustee did not have the benefit of the plaintiffs' information as to the debtor's financial activities.

3. On June 16, 1988, the debtor was granted a discharge in his Chapter 7 case. No objections to his discharge or to the dischargeability of his debts had been filed prior to the bar date as noticed by the court.

4. Pursuant to a complaint filed March 21, 1989, the plaintiffs seek to revoke and deny the discharge previously granted to the debtor on June 16, 1988.

5. The plaintiffs are creditors of the debtor as a result of the debtor's speculative trading of stock and options on margin. Plaintiff, Sloate, utilized the clearing services of Bear, Stearns in dealing with the debtor as the sole general partner of 8 Brookwood Fund.

6. Martin B. Sloate, the president of Sloate, had been a personal friend of the debtor and his wife, Barbara Stein, since 1977. He was also named as a guardian of the debtor's wife's children under the debtor's will. This friendship ended on October 19, 1987 when the debtor's margin account was sold out by Sloate on instructions from Bear, Stearns following the stock market crash on that day. The debt balance to the plaintiffs amounted to $1,849,183.00.

7. The debtor's Chapter 7 schedules listed total assets of $3,850.00 and unsecured debts in excess of $7,000,000.00.

8. Approximately two months after the debtor obtained his bankruptcy discharge, he testified under oath in a deposition given in a case pending in the United States District Court for the Southern District of New York entitled *Soap Opera Now, Inc. v. National Publishing Corp.* The debtor's stepdaughter is a 30% shareholder of Soap Opera Now, Inc. In the course of the deposition the debtor testified that his 1987 income approximated $400,000 and that his net worth was "a couple million". The deposition also reflected that the debtor received compensation from Soap Opera Now, Inc. at the rate of $1200 per week in 1987.

9. Upon learning of this deposition, the plaintiffs applied to this court and obtained an order for an examination of the debtor pursuant to Bankruptcy Rule 2004, which was conducted on December 22, 1988 and February 8, 1989. During the Rule 2004 examination the debtor informed the plaintiffs that his deposition in the Soap Opera Now, Inc. litigation was untrue and that he later corrected the deposition to reflect his true net worth and income.

10. At the Rule 2004 examination, the debtor testified that a portion of approximately $60,000.00 received by him during 1987 from an entity known as Helo, Inc. was placed in his wife's bank account; that he and his wife frequently gave each other money; that he paid for many of the carrying charges and expenses of the family residence out of his bank account; that his wife owned a 1987 Mercedes Benz which she paid for out of funds which she gave to the debtor and which were used by him in his accounting business until it was sold; that he and/or his wife purchased substantial amounts of whole life insurance, most of the policies having been transferred to his wife in 1984; that as a certified public accountant, the debtor does not bill his

clients and does not create accounts receivable, but that payments are made to him by the clients promptly after the performance of his services.

11. At the trial, it appeared that the payments for the debtor's services to an entity known as Cecil Ellis were larger in 1988 after the filing of his Chapter 7 petition than during the previous year and that from the time that plaintiffs sold out the debtor's margin account on October 19, 1987, until January of 1988, the debtor received no payments at all from Cecil Ellis. Additionally, the debtor and another individual who was the president of Soap Opera Now, Inc. were each supposed to receive equal compensation at the rate of $1200 per week for their services to this corporation. In 1986, the other individual received compensation totalling $37,800.00 and the debtor received $23,000.00. In 1988, after the debtor's bankruptcy petition was filed, the other individual received a total of $37,000.00, whereas the debtor received $50,000.00 from Soap Opera Now, Inc. From these facts the plaintiffs would have this court conclude that the debtor deliberately lowered his weekly draw from Cecil Ellis and Soap Opera Now, Inc. prior to filing his bankruptcy petition and then made up the difference after he filed his petition. However, there was no extrinsic evidence submitted to substantiate this proposed conclusion. Moreover, there was no evidence to support the inference that the debtor failed to list income to which he was entitled prior to the filing of his Chapter 7 petition.

12. The evidence also revealed that the house occupied by the debtor and his wife at 8 Brookwood, New Rochelle, New York was owned by the debtor's wife. The debtor and his wife, Barbara Stein, were previously married to other spouses. Barbara Stein owned her house as a result of her previous marriage. After she married the debtor, Barbara Stein sold her original house and thereafter purchased and sold another house before she purchased the house that she and the debtor presently occupy at 8 Brookwood, New Rochelle, New York.

13. The brokerage accounts which Sloate closed out included an account owned by Barbara Stein, which was managed by the debtor. The information as to Barbara Stein's account was fully known to Martin B. Sloate, who, with his wife, socialized frequently with the debtor and his wife. Martin B. Sloate was thoroughly aware of Kenneth and Barbara Stein's financial affairs and their life styles.

14. The Mercedes Benz, which the debtor purchased in his wife's name for $27,-000, was acquired with funds from the debtor's wife which were deposited in his bank account. The car was sold after the October 19, 1987 stock market crash for approximately $19,500. The debtor testified that he gave the proceeds from the sale to his wife.

15. The $1200 weekly salary which the debtor received in 1985 and 1986 from Cecil Ellis and Soap Opera Now, Inc. were deposited in Barbara Stein's bank account.

16. When the debtor filed his bankruptcy petition on December 16, 1987, he did not own any life insurance policies, although policies on his life had been transferred to his wife in 1984. The debtor continued to pay the interest on the policy loans. The house in which he resides is owned by his wife, although he did pay for carrying charges.

17. Had the plaintiffs appeared at the meeting of creditors on March 8, 1988, they might have elicited the information concerning the debtor's management of his wife's finances, although Martin B. Sloate, the president of the plaintiff, Sloate, Weisman, Murray & Co., Inc. was fully familiar with the financial affairs of the debtor and his wife. The plaintiffs did not elicit any new information that they could not have learned had they attended the meeting of creditors and assisted the trustee in the examination of the debtor's financial affairs.

18. The debtor testified that he did not accumulate many assets in his own name and turned over monies to his present wife, including funds used for stock trading in Barbara Stein's account because his former

wife had brought numerous alimony actions against him and therefore, Barbara Stein wanted her property in her own name. The manner in which the debtor and his present wife handled their stock market trading was fully known to Martin B. Sloate, who not only handled their stock market accounts, but also socialized with the debtor and his wife at least once a week for more than ten years during their close friendship.

## DISCUSSION

A discharge which was procured by the debtor's fraud in concealing assets or in filing false schedules may be revoked pursuant to 11 U.S.C. § 727(d)(1), which provides:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
>
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; or
>
> (3) the debtor committed an act specified in subsection (a)(6) of this section.

Thus, not only must the objecting trustee or creditors prove that the discharge was obtained through the debtor's fraud, but the requesting plaintiff must show that he or she did not know, or did not have reason to know, of the fraud.

▪ The plaintiff requesting the revocation of a fraudulently procured discharge has the burden of proving all the facts upon which revocation is conditioned by the statute, including the exercise of diligence in discovering the true facts. *In re Popovich*, 105 F.2d 154, 155 (2d Cir.1939); *In re Jones*, 71 B.R. 682 (S.D.Ill.1987); *In re*

*McElmurry*, 23 B.R. 533 (D.C.Mo.1982); *In re Benak*, 91 B.R. 1008 (Bankr.S.D.Fla. 1986); *In re Kirschner*, 46 B.R. 583 (Bankr.E.D.N.Y.1985); *In re Peli*, 31 B.R. 952 (Bankr.E.D.N.Y.1983). The plaintiff's evidence as to fraud must be clear and convincing. *In re Kirschner*, 46 B.R. at 586.

▪ When the objecting plaintiff acted diligently in investigating the debtor's conduct and did not know, and did not have reason to know, that the debtor procured his discharge through fraudulent conduct, the objecting party may obtain an order revoking the debtor's discharge. *In re Dietz*, 94 B.R. 637 (9th Cir. BAP 1988); *In re Topper*, 85 B.R. 167 (Bankr.S.D.Fla. 1988).

▪ Under the former Bankruptcy Act, the Referee in Bankruptcy conducted the examination of the debtor at the meeting of creditors. Therefore, if the debtor gave false answers and misled the Referee, a discharge could be revoked, even if a defrauded plaintiff had knowledge of the fraud before the discharge was granted, because the fraud was perpetrated on the Referee who was a judicial officer who had a duty to see that those appearing before him did not invoke his authority for the accomplishment of fraud. *In re Moynagh*, 560 F.2d 1028, 1030 (1st Cir.1977). Now that the Bankruptcy Judge acts as an impartial arbiter and is not actively involved in the administration of bankruptcy cases, the responsibility for investigating and ascertaining the financial condition of a debtor devolves upon the trustee in bankruptcy and the creditors of the estate. Therefore, the Bankruptcy Code requires that a trustee in bankruptcy or a requesting creditor must also establish that knowledge of the fraud for revocation purposes was not obtained until after the granting of the discharge.

In the instant case, the plaintiffs did not prove that they had no reason to believe that the debtor might have had an equitable interest in his wife's home or his wife's bank account until after he obtained his discharge. Martin B. Sloate, who han-

dled the stock market transactions for the debtor and his wife, and who acted on behalf of the requesting plaintiffs, was fully familiar with the fact that the debtor managed all of the stock transactions for both spouses. Sloate was also familiar with the fact that the debtor used funds from his own and his wife's bank accounts for the purchase of stocks and options. As a long-time social friend of the debtor and his wife, and as potential guardian of their children under their wills, Sloate knew, or should have known, that their house located at 8 Brookwood, New Rochelle, New York, was owned solely by the debtor's wife and that she was the owner of the life insurance policies on the debtor's life.

If he didn't know who paid the carrying charges on the house, or the life insurance policies, he certainly could have obtained this information had he attended the meeting of creditors. Similarly, if there were any questions as to who was the owner of the 1987 Mercedes Benz that the debtor drove, or what happened to the proceeds from the sale of the vehicle after the October 19, 1987 stock market crash, the plaintiffs, which acted through Sloate, could have asked the trustee in bankruptcy to inquire into these transactions.

The fact that the debtor may have given a false deposition in post-discharge litigation involving Soap Opera Now, Inc. is not relevant to the issue of whether or not his discharge in this case was procured through fraud. This is not a case where the debtor originally owned a house or an automobile or other property which he transferred to his wife and then continued to use or enjoy the benefit of the transferred property while concealing his continued equitable ownership of the property. *See In re Garcia,* 88 B.R. 695 (Bankr.E.D.Pa. 1988); *In re Topper,* 85 B.R. 167 (Bankr.S.D.Fla.1988); *In re Fragetti,* 24 B.R. 392 (Bankr.S.D.N.Y.1982); *In re Gugliada,* 20 B.R. 524 (Bankr.S.D.N.Y.1982); *In re Vecchione,* 407 F.Supp. 609 (E.D.N.Y.1976). Here, the debtor never owned the home in which he resides with his wife, nor did he own the 1987 Mercedes Benz automobile which he drove. The funds for the home and the automobile were attributable to the debtor's wife. The life insurance policies on the debtor's life were transferred to his wife in 1984. The debtor's transfers of the life insurance policies to his wife have never been set aside as fraudulent.

Although the debtor's compensation for services performed for such entities as Soap Opera Now, Inc., and Cecil Ellis may have been smaller during the period before he filed his Chapter 7 petition than after he filed his Chapter 7 petition, such fact alone does not prove that there was unreported prepetition income or that the debtor's schedules are false. The plaintiffs have not established that the debtor was entitled to income or assets which should have been, but were not reported on his bankruptcy schedules. The fact that the debtor and his wife at times transferred funds to each other from their respective bank accounts does not mean that Mrs. Stein's bank account should be treated as belonging to the debtor. Mrs. Stein relied upon her husband to manage her investments, which at one time were considerable. These facts were well-known to the plaintiffs through Martin Sloate. Nonetheless, they did not attend the meeting of creditors, did not furnish information to the trustee to support a further investigation as to the debtor's financial affairs, did not examine the debtor before his discharge was granted and did not object to the granting of such discharge.

Not only have the plaintiffs not acted diligently before the debtor's discharge was granted, but they have failed to produce any clear and convincing evidence that his discharge was improvidently granted because it was procured by fraud.

## DEBTOR'S REQUEST FOR SANCTIONS

The plaintiffs had a basis for suspecting that there existed grounds for denying the debtor's discharge. However, the plaintiffs failed to act diligently in articulating their objection to debtor's discharge and failed to establish by clear and convincing evidence that the debtor procured his discharge through fraud and the plaintiffs did not know of such fraud until

after the granting of the discharge. That the plaintiffs could not sustain their adversary proceeding to revoke the debtor's discharge by clear and convincing evidence does not mean that the complaint was groundless. The plaintiffs concluded that the information they obtained from the post-discharge examination of the debtor pursuant to Bankruptcy Rule 2004 supported their suspicions that the debtor obtained his discharge through fraud which was not known to them at the time. Sanctions imposed under Fed.R.Civ.P. 11, as made applicable under Bankruptcy Rule 9011, are not granted simply because the pleading was not sustained. The court should not employ the wisdom of hindsight in determining what was reasonable to believe at the time the adversary complaint was filed. *See* Advisory Committee Note to the 1983 amendments to Rule 11, 97 F.R.D. 165 at 199 (1983).

The standard imposing sanctions is one of reasonableness under the circumstances. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985), *cert. denied* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452 (2d Cir.1988), *cert. granted sub nom. Pavelic & Leflore v. Marvel Entertainment Group*, —— U.S. ——, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989); *Motown Productions, Inc. v. Cacomm, Inc.*, 849 F.2d 781 (2d Cir.1988) (not every losing argument warrants the imposition of sanctions).

The debtor argues that the complaint was filed for an improper purpose, namely, delay and harassment in order to put pressure on the debtor to settle or otherwise embarass the debtor with regard to other unrelated litigation. However, this unsupported argument elides the fact that plaintiffs have a claim against the debtor for $1,849,183.00, which will not be satisfied and that groundless litigation will not advance the plaintiffs' interests. The plaintiffs did uncover additional information after the debtor obtained his discharge. However, the evidence reveals that the plaintiffs had sufficient information concerning the debtor's financial affairs to enable them to pursue their objections before his discharge was granted. It cannot be said that their complaint was utterly without merit.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(J).

2. The plaintiffs have not established by clear and convincing evidence that the debtor's discharge was obtained through fraud within the meaning of 11 U.S.C. § 727(d)(1).

3. The plaintiffs have not established that they were diligent in discovering the facts which they claim constituted the fraudulent procurement of the debtor's discharge, nor did they prove that they had no reason to know these facts before the discharge was granted.

4. The complaint which seeks to revoke the debtor's discharge pursuant to 11 U.S.C. § 727(d)(1) shall be dismissed.

5. The debtor's request for sanctions pursuant to Fed.R.Civ.P. 11, as adopted by Bankruptcy Rule 9011, is denied.

SETTLE ORDER on notice.