In re John A. ARIANOUTSOS, Debtor.

**WEST SUBURBAN BANK OF DARIEN, Plaintiff,**

v.

**John A. ARIANOUTSOS, Defendant.**

**Bankruptcy No. 89 B 00219.
Adv. No. 89 A 0607.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 3, 1990.

John Pcolinski, Jr., Guerard, Kalina, Musial, Ulrich & Varchetto, Wheaton, Ill., for Bank.

John R. Krupa, Flossmoor, Ill., for debtor.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

West Suburban Bank of Darien filed an adversary complaint to revoke the Debtor's discharge under 11 U.S.C. § 727(d). At the trial, the bank amended its complaint to include allegations that the debt owed to it should not be discharged pursuant to 11 U.S.C. § 523(a)(2). Because the relief sought by the bank is time-barred, judgment is entered for the Debtor. The Debtor's discharge will not be revoked and the debt owed to the bank is dischargeable.

### FINDINGS OF FACTS

In 1985, the bank made an unsecured loan to the Debtor. The Debtor submitted a financial statement to the bank listing three parcels of real estate owned by the Debtor. Sometime in late 1987, the Debtor defaulted on the loan from the bank. On April 4, 1988, the Debtor transferred his interest in two of the properties to his wife for a token consideration of $10.00. On January 6, 1989, the Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code. Soon after the filing, the Court entered an Order pursuant to Bankruptcy Rules 4004(a) and 4007(c) setting April 11, 1989 as the deadline for filing a complaint to determine dischargeability of a debt and for objecting to the discharge of the Debtor. The Debtor's schedules did not list the two transfers to his wife that occurred within the year prior to his bankruptcy. In accordance with 11 U.S.C. § 341, a creditor's meeting was set for February 2, 1989. At trial, there was no evidence introduced concerning the bank's participation at the § 341 creditors' meeting or whether the bank had inquired about the property listed on the Debtor's earlier financial statement in the bank's possession. On April 4, 1989 the Debtor's discharge was entered.

The bank brought its complaint to revoke the discharge on July 5, 1989. The bank's executive vice-president testified at the trial that the bank first became aware of the conveyances to the Debtor's wife shortly before the complaint to revoke the discharge was filed. The bank's complaint and the trial memorandum stated that it only found out about the conveyances on June 13, 1989, when a tract book search revealed the transfers. No evidence was introduced as to why the bank waited until after the discharge to conduct a tract book search.

### CONCLUSIONS OF LAW

I. Dischargeability.

The bank seeks to have the debt owed to it declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Under Bankruptcy Rule 4007(c)[1] and this Court's Order, the bank was required to file a complaint to determine dischargeability by April 11, 1989. The bank was listed as an unsecured creditor on the Debtor's schedules and there was no evidence that the bank was not given full and adequate notice of the bankruptcy proceedings. The

1. Bankruptcy Rule 4007(c) states:
   A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided by Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

bank, therefore, is now time-barred from raising the issue of dischargeability. *See, e.g., In re Peli,* 31 B.R. 952, 955 (Bankr.E. D.N.Y.1983).

## II. Revocation of Discharge.

A discharge can be revoked pursuant to 11 U.S.C. § 727(d)(1), which provides:

On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

■■■ A discharge obtained through the debtor's fraud in filing false schedules can be revoked under this section. *In re Stein,* 102 B.R. 363, 367 (Bankr.S.D.N.Y.1989). The plaintiff requesting the revocation, however, has the burden of proving all the elements contained in the statute. *E.g., In re Kirschner,* 46 B.R. 583, 586 (Bankr.E.D. N.Y.1985). This includes the plaintiff's lack of knowledge of the fraud. *E.g., In re Topper,* 85 B.R. 167, 169 (Bankr.S.D.Fla. 1988).

The threshold issue here is whether the bank had knowledge, within the meaning of section 727(d), of the Debtor's fraud prior to the discharge. In determining the meaning of the phrase "did not know" in § 727(d), the Court must construe this statute liberally in favor of the Debtor. *In re Lyons,* 23 B.R. 123, 125 (Bankr.E.D.Va. 1982). Many courts have held that the creditor or the trustee must show, not only that it did not know, but also that it could not have known of the debtor's fraud prior to discharge. *E.g., In re Stein,* 102 B.R. at 367; *In re Topper,* 85 B.R. at 169 ("The threshold issue, therefore, is whether or not the trustee lacked notice or knowledge of the debtor's false oaths"); Ginsberg, Bankruptcy 2d Ed. § 1104[b] (1989) ("The standard here is similar to a newly discovered evidence standard ... the creditor or the trustee must show that it neither knew nor could have known.")

In *In re Stein,* the court held that the creditor seeking to revoke the discharge of the debtor did not exercise diligence in discovering the facts concerning the debtor's interests in his wife's home and bank account which were not listed on the bankruptcy schedules. *In re Stein,* 102 B.R. at 368. The bankruptcy court in *Stein* found that the creditor was familiar with the debtor's financial transactions and could have obtained more specific information concerning the debtor's interests if he had attended and asked questions at the § 341 creditors' meeting. *Id.* Having failed to do so, the creditor could not obtain revocation of the debtor's discharge on the basis of information that it could have discovered before the discharge was granted, had the creditor been diligent.

Some courts that reach the same result refer to the equitable defense of laches in holding that the creditor or trustee must act diligently if they have notice of any fraud on the part of the debtor. *See, e.g., In re Jones,* 71 B.R. 682 (S.D.Ill.1987); *In re McElmurry,* 23 B.R. 533, 535 (W.D.Mo. 1982); *In re Herron,* 49 B.R. 32 (Bankr.W. D.Ky.1985). For example, in *McElmurry,* the debtor said at the creditors meeting that she sold her interest in certain properties and that is why she did not list them on her bankruptcy schedules. The creditor waited until two months after the discharge was entered to conduct a tract book search concerning those properties. The *McElmurry* court found that the creditor was guilty of laches because it was not diligent in investigating facts disclosed by the debtor at the § 341 creditors' meeting. *McElmurry,* 23 B.R. at 536.

■■■ Generally, laches is not a proper defense to an action filed within the applicable statute of limitations. *United States v. RePass,* 688 F.2d 154, 158 (2nd Cir.1982); *In re Korvettes, Inc.,* 67 B.R. 730, 734 (S.D.N.Y.1986) (Laches is not available as a defense to a preference action because § 546(a) establishes a limitation period for bringing those actions.); *In re Petty,* 93 B.R. 208, 212 (9th Cir.BAP 1988) *quoting Royal Air Properties v. Smith,* 312 F.2d 210, 214 (9th Cir.1962) ("Where Congress

has provided a specific and relatively short statute of limitations, it can be inferred that the federally created limitation is not to be cut short.") Since Congress has provided that a request for revocation of a discharge must be made within one year after the discharge, 11 U.S.C. § 727(e), laches cannot be applied to shorten that period.

 Moreover, the proper application of laches requires more than a lack of diligence; there must be a showing of prejudice to the defendant resulting from the delay. *Smith v. City of Chicago*, 769 F.2d 408, 410 (7th Cir.1985); *Lingenfelter v. Keystone Consol. Industries, Inc.*, 691 F.2d 339, 340 (7th Cir.1982). The shorter the delay in filing suit, the greater the prejudice that must be shown. *Zelazny v. Lyng*, 853 F.2d 540, 543 (7th Cir.1988). The action in these cases is to revoke a discharge. Such an action cannot be filed at all until after a discharge. In *McElmurry*, for example, the complaint was filed only two months after the discharge was granted. It does not appear that anything happened during that short period to prejudice the debtor. Rather, the court was concerned with things that happened before the discharge was granted, none of which prejudiced the debtor. Here, too, nothing happened in the short period of time between the discharge and the filing of the complaint, or even before the discharge, that prejudiced the debtor so as to justify the invocation of the doctrine of laches.

Not only is laches inapplicable, but its application runs the risk of defeating expressed Congressional intent. Congress has dealt with the problem of a dilatory creditor or trustee in section 727(d) itself. Congress requires proof that the plaintiff "did not know" of the fraud that warrants provocation. To apply an equitable doctrine or a due diligence requirement to defeat a claim by a plaintiff who "did not know of such fraud" would be to impose judge-made rules to defeat a Congressionally defined right. Thus, the real question is not laches or due diligence, but the meaning of the phrase "did know of such fraud" in section 727(d), as applied to the facts here.

The bank had the Debtor's 1985 financial statement which revealed the Debtor's interests in three parcels of real estate. Four years later the Debtor filed his bankruptcy schedules stating that he did not have any interests in real estate and also that he had not made any transfers of property within the prior year. The Debtor's home address listed on his schedules, however, was the same address as one of the properties listed on his earlier financial statement. All of the information possessed by the bank should have put them on notice that the schedules might be false. Moreover, the only information the bank lacked, concerning the transfers, was a matter of public record. On this evidence, this Court cannot find that the bank "did not know" of the Debtor's alleged fraud until after the discharge. Therefore, the bank has not proven all the elements necessary to have the Debtor's discharge revoked under 11 U.S.C. § 727(d).

### CONCLUSION

For the reasons stated above, judgment is entered for the Debtor. The Debtor's discharge stands and all other relief sought by the bank is denied.

A final judgment order will be entered accordingly.