In re Charles David COCHARD and Linda Lou Cochard, Debtors.

Karla WOOD, Plaintiff,

v.

Charles David COCHARD and Linda Lou Cochard, Defendants.

Bankruptcy No. 92–45719–293.
Adv. No. 93–4417–293.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Feb. 10, 1995.

John D. Beger, Rolla, MO, for plaintiff.

Cynthia Eckelkamp, Union, MO, for debtors/defendants.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28

U.S.C. § 157(b)(2)(J), which the Court may hear and determine.

## PROCEDURAL BACKGROUND

1. On August 20, 1992, Charles David and Linda Lou Cochard filed their voluntary Chapter 7 bankruptcy petition and their Schedules and Statement of Financial Affairs. In the Stipulated Facts filed April 4, 1994, the parties agreed that:

On Schedule B line 29, Debtors showed they owned no animals.

On the Statement of Financial Affairs, Paragraph 10, Debtors listed a transfer as follows:

| Name and address of transferee, Relationship to Debtor | Date | Describe Property Transferred and Value Received |
|---|---|---|
| C.C. Cochard—Debtor's Father | 8–18–92 | 11 Guernseys—$8,250 |

(Mr. C.C. Cochard's address was listed in paragraphs 3(b) and 14).

On Paragraph 14, Debtors listed property held for another person as follows:

| Name and Address of Owner | Description and Value of Property | Location of Property |
|---|---|---|
| Dottie Hensel 1000 Portofin Arlington, TX 76012 | 4 Guernseys | Debtors' farm/house |
| C.C. Cochard 5840 N. Fortville Pike Greenfield, IN 46140 | 5 Guernseys | Debtors' farm/house |

On Paragraph 16, Debtors listed businesses in which they were engaged as follows:

| Name and Address | Nature of Business | Beginning and Ending Dates of Operation |
|---|---|---|
| Arrow Head Guernseys Rt. 4, Box 337 Union, MO 63084 | Guernsey breeding | Started 1983 |

2. November 16, 1992, was the deadline for parties to file adversary complaints based on Exceptions To Discharge and/or Objections To Discharge, pursuant to 11 U.S.C. § 523 and § 727, respectively. On December 11, 1992, Debtors were granted their discharge.

3. Karla Wood filed the instant adversary proceeding on July 19, 1993, seeking a revocation of Debtors' discharge under 11 U.S.C. § 727(d)(1). Debtors filed an answer and request that Rule 11 Sanctions be imposed. Karla Wood responded to the Rule 11 motion with additional evidence to support her allegations of fraud on the part of the Debtors. On October 15, 1993, Debtors renewed their motion for summary judgment and request for imposition of Rule 11 Sanctions. On January 4, 1994, the court issued an Order Denying Debtors' Motion for Summary Judgment.

## FACTUAL BACKGROUND

Upon consideration of the evidence, testimony, argument of counsel and the parties' Stipulated Facts, the Court makes the following findings of fact.

1. The case before the Court involves a dispute between Karla Wood and her mother, Linda Lou Cochard. They were in the Guernsey breeding business since Karla was a little girl. Linda is a well-known and high-

ly respected breeder of Guernseys. When Karla was in grade school, Linda registered a number of Guernsey cattle in Karla's name for the purpose of providing her with a college fund. Linda divorced Karla's natural father when Karla was thirteen and the mother and daughter moved from Texas to Indiana. Linda later married David Cochard. When Karla turned 18, she requested permission from her mother to sell the cows registered in her name in order to have money for college tuition. Linda refused to give permission and instead used the power of attorney, previously given her by Karla when she was a minor, to transfer registration out of Karla's name and into her own.

2. In 1991, Karla won a $53,000 judgement in state court against Linda and her husband, David, for fraud in connection with the registration and sale of her cattle. Karla's attorney began a garnishment proceeding against the Cochards shortly thereafter.

3. A few days before filing their Chapter 7 proceeding, the Cochards sold all of the cattle they owned to David's father, C.C. Cochard, for the sum of $8,250. Evidence at trial demonstrated that the sale price did not differ significantly from the price the Cochards would have received for the cattle at a public auction.

4. The Cochards did not transfer the cattle's registration to C.C. Cochard, nor did they transfer possession or control of the cattle. Linda continued to care for the cattle and to exhibit them in shows.

5. The evidence presented at trial demonstrated that this sort of conduct with regard to the location and registration of the cattle after a sale is not unusual in the Guernsey breeding industry, particularly where the transfer is between family members or close friends. When Karla was a minor, several cattle owned by family friend Dorothy Hensel were registered in Karla's name for purposes of showing them at expositions. Even though the cattle were listed in Karla's name, she did not dispute Dorothy's ownership. It appears that the community of people involved in Guernsey breeding is small and closely-knit and that transactions are informal and rely on the honor system. Formal written contracts between persons owning cattle and persons raising, grooming, milking or showing cattle are rare.

6. The Cochards filed for bankruptcy under Chapter 7 on August 20, 1992. They attended their section 341 meeting on September 15, 1992. Neither Karla Wood nor her attorney were in attendance, though she had received notice and was informed that the proceedings could interfere with her ability to collect the judgment award from the Cochards.

7. On or about the 7th of November 1992, Karla saw her mother at the North American International Livestock Exposition (NAILE) in Louisville, Kentucky. Linda told Karla she and David were there to show cattle for friends.

8. Before September 20, 1992, Debtors submitted an entry form to NAILE which was to be held on November 7–20, 1992, in Louisville, Kentucky. That entry form listed the following nine Guernseys as being entered:

> Arrowhead Topaz Fancy, Arrowhead OK Lucky's Likeable, Arrowhead Lucas Monica, Arrowhead C. Melody, Arrowhead L. Panda, Gages Linkon Toni, Gages Fayvor Likeable E.T., Arrowhead Linkon Jolly, and Mungles Colonel's Taffy.

9. Debtors owned two or more cows at the time of the NAILE. One, Gages Linkon Toni, was a gift from Linda Cochard's daughter in October 1992. Another, Carr Creek Jake Mandy, was purchased by Debtors at the Carr Creek dispersal sale in October 1992.

10. The Catalog of Entries contained the names of all the cows which were submitted as potential entrants on the entry form submitted by Debtors prior to September 20, 1992. It did not contain actual information concerning the cows shown by Debtors at the NAILE. The nine Guernseys listed in that catalog are the only animals listed in Paragraph 2 of Plaintiff's Suggestions in Support of Plaintiff's Adversary Complaint. In those Suggestions, Plaintiff lists those nine Guernseys in the exact order in which they are found in that catalog.

11. Section A of Article VI of the Bylaws of the AGA provides "every change in ownership of a registered animal shall be promptly

recorded with the Association by the seller, in order that progeny of the animal may be registered and subsequent changes in ownership recorded." Neither the AGA Constitution nor its Bylaws contain a definition of owner or a requirement that an animal must be registered in the name of the legal owner of the animal. AGA registration papers contain the following statement: "the ownership of this animal has been transferred on the records of the AGA, but in no event is it to be deemed a guarantee of the legal or equitable ownership of the animal."

12. Evidence presented at trial demonstrated that copies of the Catalog of Entries were being sold at several different locations throughout the convention center for the duration of the show, and that it would have been virtually impossible for Karla not to have had an opportunity to purchase one at the time.

13. Karla testified that she had no reason at the time of the exposition to suspect her mother of deceiving her as to the ownership of the cattle the Cochards brought with them to show.

14. Karla's attorney, Mr. Beger, testified he had an opportunity to review the Cochards' schedules soon after they were filed. He said that at the time, he believed Debtors owned a cow named Dewberry Likable and noticed it was not listed on the Debtors' schedules. Paragraph 10 of the Debtors' Statement of Financial Affairs clearly indicated that the Debtors had transferred 11 Guernseys to C.C. Cochard, Debtor's father, for $8,250.00. Obviously, this information was available to the Plaintiff and her counsel. However, he did not investigate the matter until after discharge was granted.

15. The Guernsey Breeder's Journal distributed its November issue on or before November 25, 1992. That issue contained an advertisement for the Cochards' dairy farm, Arrow Head Guernsey, which read:

"Home of Likable" Arrow Head Guernseys, Dave and Linda Cochard. The Journal also contained an article entitled Who's Who which listed Arrow Head Guernseys and gave a one-paragraph description of the Cochards' dairy operation. It noted that "their milking animals" were housed in Texas.

16. Karla subscribed to the Arrow Head Journal in 1992 and a copy of the November issue was sent to her farm in Rolla. She and her husband had moved to an apartment in Sedalia and did not collect the mail from the farm until some time in January.

17. Karla Wood and her attorney waited until some time after the Cochards received their discharge to begin investigating the Cochards' schedules and financial statements, and did not file this adversary proceeding until July of the following year.

18. Evidence indicated that all of the information pertaining to Debtors' alleged fraud in connection with filing for bankruptcy was available to Karla prior to discharge being granted and she failed to investigate. Karla's attorney failed to present evidence at trial that demonstrated he and his client did not know and had no reason to suspect fraud before discharge was granted, nor did he attempt to show that they investigated the situation prior to that time. Further, her attorney did not put on evidence to show fraud in the sale price. He focused his efforts at trial on attempting to show that a sale never took place, and that the Cochards owned several cattle at the time of filing which they deliberately did not list on their schedule of assets.

### DISCUSSION

■ Karla Wood seeks revocation of the Cochards' discharge under 11 U.S.C. § 727(d)(1). Section 727(d)(1) empowers the court to revoke a debtor's discharge up to one year after discharge is granted if the plaintiff is able to show that:

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge. 11 U.S.C. § 727(d)(1).

The plaintiff has the burden of proving both elements by clear and convincing evidence. If the court grants the revocation of discharge, all of defendant's debts are reinstated, not just the debt owed to plaintiff.

■ The threshold issue in a revocation of discharge action is whether the "did not

know" language should be broadly or narrowly interpreted. The Eighth Circuit in *Mid–Tech Consulting Inc. v. Swendra* sided with the majority of courts that have addressed this issue and adopted a broad interpretation. *Mid–Tech Consulting Inc. v. Swendra*, 938 F.2d 885 (8th Cir.1991). The Eighth Circuit held:

> We agree with the Swendras and the majority of the courts that have addressed this issue, and hold that dismissal of a § 727(d)(1) revocation action is proper where, before discharge, the creditor knows facts such that he or she is put on notice of a possible fraud. *See Arianoutsos*, 116 B.R. at 119. Thus, the burden is on the creditor to investigate diligently any possibly fraudulent conduct before discharge. *Mid–Tech*, 938 F.2d 885 at 888; *See Stein*, 102 B.R. at 368; *[In re] Benak*, 91 B.R. [1008] at 1009–10. [ (Bank.S.D.Fla. 1988) ].

The creditor need not have had actual knowledge of the alleged fraud prior to the discharge hearing. If the creditor so much as could have known of the alleged fraud, they have an affirmative duty to investigate before the discharge is granted or the court will dismiss the motion to revoke discharge. *West Suburban Bank of Darien v. Arianoutsos*, 116 B.R. 116 (Bankr.N.D.Ill.1990), *Mid–Tech Consulting, Inc. v. Swendra*, 938 F.2d 885 (8th Cir. 1991). The burden is on the creditor to investigate diligently any possible fraud before discharge. *Bear Stearns & Co. Inc. v. Stein*, 102 B.R. 363 (Bankr.S.D.N.Y. 1989). The Eighth Circuit in *Mid–Tech* explained that it wants to avoid situations in the future where a creditor has access to information that the debtor acted fraudulently in filing for discharge but for whatever reason delays in alerting the court. *Mid–Tech*, 938 F.2d at 888. This kind of delay results in waste of judicial resources. The court prefers for these matters to be handled as motions to deny discharge under § 523 of the Code. *Id.*

■ If the petitioning creditor meets its burden of proving he or she had no actual or potential knowledge of debtor's alleged fraud prior to the discharge, the next step is for creditor to prove that debtor committed actu-

al fraud in connection with filing for and obtaining discharge. If the creditor is able to overcome both hurdles, a revocation of debtor's discharge will be granted.

The Bankruptcy Court in *Bear Stearns* analyzed a motion for revocation using the same broad interpretation of the "did not know language" that the Eighth Circuit later adopted in *Mid–Tech*. *Bear Stearns*, 102 B.R. at 366. The creditor in *Bear Stearns*, Mr. Sloate, received timely notice of the meeting of creditors and the time fixed for filing complaints objecting to discharge pursuant to Bankruptcy Rule 4004. Sloate did not attend the creditor's meeting, nor did he file an objection to discharge prior to the date of discharge. Debtor's discharge was granted on June 16, 1988.

Sloate had been a personal friend of the Debtors and was named as guardian for Debtors' children in their will. *Id.* At 365. He was also their stockbroker for many years before the bankruptcy. A few months after the discharge, one of the debtors testified in an unrelated trial and represented his financial worth at "a couple of million" and his annual income at approximately $400,000. *Id.* When Sloate learned the content of the testimony, he brought an action under section 727(d)(1). The court found that the creditor failed to show by clear and convincing evidence that the debtors had acted fraudulently when they filed for discharge. *Id.* at 369. The factors that the court weighed in its decision to deny the motion to revoke were 1) had Sloate attended the creditor's meeting, he might have elicited information that explained debtor's post-discharge income and 2) Sloate, as a friend and stockbroker, was intimately familiar with debtor's financial situation at the time of filing and should have known of any fraudulent activity related to filing before discharge was granted, if such fraud existed. *Id.* at 366. The creditor failed to act diligently and investigate before discharge and thus, the court dismissed his motion in favor of the debtor. The facts in the present case are similar to the facts in *Bear Stearns*.

A review of relevant case law reveals that courts are reluctant to grant the revocation of a debtor's discharge based on § 727(d)(1)

adversary complaints that are filed by creditors and/or the trustee.[1] Section 727 is viewed as an extreme remedy to be awarded only where debtor's conduct was egregious and creditor's conduct was timely and conscientious. One court which granted a creditor's motion for revocation of discharge did so on the grounds of due process, not § 727(d)(1). *In re Ford*, 159 B.R. 590 (Bankr.D.Or.1993). In that case, creditor failed to bring a timely motion under section 727. However, the court found on testimony at trial the creditor would have been able to prevail in an action based on fraud under § 727 if the debtor had not deliberately refused to notify creditor when they filed. *Ford*, 159 B.R. at 590. The creditor in *Ford* was thus deprived of due process. Debtor's actions deprived him of his right to be heard in this matter affecting his property interest. *Id.* The court found for the creditor and revoked debtor's Chapter 7 discharge. In the present case, no such extenuating circumstances exist. Karla Wood and her attorney were given timely notice of the Cochard's bankruptcy petition.

■ The Court finds for the Cochards on the grounds that Karla Wood and her attorney failed to prove the two elements of section 727(d)(1). They failed to meet the threshold "did not know" requirement. Like Sloate in *Bear Stearns*, Karla Wood had potential, if not actual, knowledge of Debtors' alleged fraud in connection with filing for discharge. She had a close, albeit unhappy, personal relationship with the Debtors. Even after Karla won the judgement against her mother and Mr. Cochard in state court, information concerning the Cochards and their interest in cattle and the cattle industry continued to be available to Karla. For example, Karla was present at the NEILE show and saw the Cochards' cattle exhibit. She had an opportunity to purchase a program which listed the cows that were to be exhibited by her mother. Karla testified she had no reason at the time of the exposition to suspect her mother of deceiving her as to the ownership of the cattle the Cochards had brought with them to the show. However, having won a civil judgment against her mother and stepfather based on fraud, it would seem logical that Karla would suspect her mother of possible deception and experience should have alerted Karla of the importance to carefully monitor the Cochards' conduct for potential fraud. When she saw the cows the Cochards exhibited, she should have investigated as to the ownership of those cows prior to the Debtors receiving their discharge.

The alleged fraudulent act in the instant case was the sale prior to the filing of the current bankruptcy of several Guernseys owned by the Cochards, to Mr. Cochard's father. The Schedules and the Debtors' Statement of Affairs were available in the Clerk's office for inspection by all creditors, including Karla. Karla and her attorney had the opportunity to review the schedules, which clearly set forth the details of this transaction, but presumably they failed to do so until after discharge was granted. The breeder's magazine containing ads upon which Karla's argument relied so heavily, was mailed to her farm prior to discharge. Neither Karla nor her attorney attended the Debtors' 341 meeting. The factors the *Bear Stearns* court found dispositive in its decision to deny revocation are present here. First, Wood and her attorney did not attend Debtors' section 341 meeting. Had they attended the creditor's meeting and/or reviewed the

---

1. *In re Jones*, 71 B.R. 682 (Bankr.S.D.Ill.1987) (court denied creditor's motion for revocation of discharge on grounds that creditor failed to show proper diligence in investigating before discharge was granted.); *In re McElmurry*, 23 B.R. 533 (W.D.Mo.1982) (court found creditor guilty of laches in moving for revocation of discharge due to failure to investigate before discharge granted); *Mid–Tech Consulting, Inc. v. Swendra*, 938 F.2d 885 (8th Cir.1991) (court denied creditor's motion for revocation because while creditor's counsel made a reasonable inquiry prior to discharge, it was not sufficient to meet the standard under section 727); *West Suburban Bank of Darien v. Arianoutsos*, 116 B.R. 116 (Bankr.N.D.Ill.1990) (based on the evidence court concluded creditors could not "not have known" of the fraud prior to discharge); *Miller–Claborn Distribution Co., Inc. v. Richard*, 165 B.R. 642 (Bankr.W.D.Ark.1994) (court held that creditor had means to obtain all facts it presented on revocation issue before debtor obtained discharge and thus did not meet the standard of diligence required before revocation will be granted).

Debtors' Statement of Affairs, they might have elicited information that explained Cochards' pre-petition sale of the cows. Second, Wood, as Linda Cochard's daughter and fellow Guernsey breeder, was quite familiar with the Cochards' interest in the cattle industry at the time of filing and, with a minimum of investigation, should have uncovered any fraudulent activity on the part of the Debtors before discharge was granted.

For all of these stated reasons, the Court denies Plaintiff's request to revoke the Debtors' discharge, pursuant to 11 U.S.C. § 727.

An Order consistent with this Memorandum Opinion will be entered this date.